221 N.J. Super. 123 (1987)
534 A.2d 31
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
KEASTON WRIGHT, A/K/A YUSEF, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 1987.
Decided November 17, 1987.
*124 Before Judges BRODY, LONG and SCALERA.
Herbert H. Tate, Jr., Essex County Prosecutor, for appellant (Virginia M. Lincoln, Assistant Prosecutor, of counsel and on the letter brief).
Noto and Cuba, for respondent (Maria Delgaizo Noto, of counsel and on the letter brief).
The American Civil Liberties Union, filed a brief amicus curiae (Annamay T. Sheppard, attorney, on the brief).
PER CURIAM.
The State appeals from an order granting defendant's application for a change in sentence pursuant to R. 3:21-10(b)(2) because he is suffering from Acquired Immune Deficiency Syndrome (AIDS). We reverse.
Defendant, Keaston Wright, is 39 years old and apparently contracted AIDS as a result of his use of a contaminated hypodermic syringe in connection with his addiction to drugs. His present incarceration stems from his involvement in the armed robbery of one William Jones on July 7, 1984. At that time Wright was with two codefendants, Charles Beverly and Sheila McEntyre and held a razor to the victim's throat robbing him of some $183. All three codefendants were indicted for first degree robbery, aggravated assault, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. On February 28, 1986 pursuant to a plea agreement, Wright entered a plea of guilty to first degree robbery contrary to N.J.S.A. 2C:15-1 and possession of a weapon for an unlawful purpose contrary to N.J.S.A. 2C:39-4d. The remaining two *125 counts were to be dismissed, defendant was to be sentenced on the basis of a second degree offense and the aggregate sentence was not to exceed six years with a two year period of parole ineligibility.
The presentence investigation report (PSI) relied upon by the sentencing judge noted that Wright had previously been arrested both as a juvenile as well as an adult, with six prior convictions, three of which were for indictable offenses. In 1969 defendant was convicted for unlawful sale of a controlled dangerous substance and received a three year probationary sentence. In 1976 he was sentenced to an indeterminate term to Yardville based on his commission of an armed robbery in 1971. Similarly, in 1981 he was sentenced to 364 days incarceration for a robbery committed in 1978. The disorderly persons convictions reflected his extensive and prolonged illegal use of drugs.
The PSI also noted that defendant claimed to be in "poor health" having suffered from "pneumonia, low white blood cell count, respiratory problems, high blood pressure, anemia, sinus bleeding and narcolepsy." He had previously been in a drug program at DANA Clinic and the Veterans Administration Hospital as well as on methadone maintenance. The PSI also indicated that defendant had been married twice and separated from his second wife since 1978. He had three (or four) children "with whom he has little or no contact."
On April 11, 1986 Judge Charles E. Villanueva consummated the plea agreement by sentencing defendant to six years imprisonment with a two year period of parole ineligibility. The imposition of this sentence resulted from an assessment of defendant's prior record as well as the need for punishment and deterrence. Based on the jail credits awarded for his pretrial confinement, defendant is eligible for parole consideration in early December, 1987.
On August 14, 1987 defendant moved for a "reduction of sentence." Since Judge Villanueva was no longer assigned to *126 hear criminal matters, the motion was heard by another judge. In support of the application defendant offered hospital records of treatment rendered during his confinement, a letter from the prison system's Health Services Coordinator and one from the Assistant Supervisor of the Health Services Unit, a letter from a psychologist, Dr. Harvey Musikoff, who has been "working with" defendant at the prison and a letter from Father Dennis O'Brien, an Institutional Chaplain at the prison. The State presented no evidence but vigorously opposed the application. However, the State conceded that while incarcerated, defendant "has conquered his drug addiction and organized his own anti-drug campaign."
The "hearing," which was initially conducted on August 28, 1987, consisted only of the oral arguments of counsel and comments and conjectures about the nature and course of the AIDS disease. The trial judge indicated clearly that he was inclined to grant relief but continued the matter pending submission of a specific proposal indicating the terms and conditions which would govern defendant's release from prison. Thereafter, additional information detailing defendant's involvement in and commitment to, the anti-drug campaign was supplied. The "hearing" was reconvened on October 6, 1987 at which time the judge signed an order which "reduced" the prior sentence to two (2) years probation upon the condition that defendant perform community service with a drug rehabilitation program, that he be treated at the VA hospital and participate in its AIDS program.[1]
We granted the State's application for a stay of that order pending disposition of this appeal. The State contends that the trial judge abused his discretion in releasing defendant from *127 further service of a custodial sentence pursuant to R. 3:21-10(b)(2).
That rule authorizes the trial court to amend a prior custodial sentence to permit defendant's release "because of illness or infirmity of the defendant." Such a decision is basically one resting within the sound discretion of the trial court. State v. Priester, 99 N.J. 123, 135 (1985); State v. Tumminello, 70 N.J. 187, 193 (1976). Because the benefit flowing to a defendant from the provisions of this rule are extraordinary it "must be applied prudently, sparingly, and cautiously." State v. Priester, supra, 99 N.J. at 135. Moreover, application of this rule only permits the release of a defendant from custody and not a "reduction" of his sentence, in any event. Id. at 141; State v. Sanducci, 167 N.J. Super. 503, 511 (App.Div. 1979), certif. den. 82 N.J. 263 (1979).
In considering whether such relief may be granted it is incumbent upon a defendant to demonstrate first that a change of circumstances amounting to a severe depreciation of his health has occurred since the time he was originally sentenced. State v. Priester, supra, 99 N.J. at 136. Thereafter the trial court must weigh various factors that affect the decision whether to grant a release such as, the nature and severity of the crime for which he is imprisoned, his criminal record, the risk that might result to the public by his release, the defendant's role in bringing about his current state of health, the nature of that illness and the availability of appropriate medical services in prison to adequately treat or cope with that illness. Id. at 135-137. Of course, the trial court is required to detail the reasons for granting or denying the relief to the end that there may be a meaningful review. State v. Tumminello, supra, 70 N.J. at 194.
Finally, "in order to prevail, the prisoner must show that the medical services unavailable at the prison would be not only *128 beneficial and, in the case of therapy, rehabilitative, but are essential to prevent further deterioration in his health." State v. Priester, supra, 99 N.J. at 135. While it is not necessary in every instance to produce live testimony from knowledgeable persons, individual cases may require such a presentation to better enable the trial court to determine whether those various factors have been adequately established. Id. at 139-140; State v. Verducci, 199 N.J. Super. 329, 334-335 (App.Div. 1985), certif. den. 101 N.J. 256 (1985); State v. Sanducci, supra, 167 N.J. Super. at 510. Cf. State v. Trippiedi, 204 N.J. Super. 422, 427 (App.Div. 1985).
In the instant case, the documentary evidence submitted by defendant in connection with his motion established only a limited number of facts. Sometime in 1986, defendant had been diagnosed as suffering from AIDS, a disease for which there is presently no known cure. As of November, 1986 his condition responded to hospital treatment thus permitting his transfer to the prison medical unit where 14 AIDS patients "who do not require acute care hospitalization" are housed. As of August, 1987, defendant's condition was medically classified as "moderately advanced" and "stabilized" on Retrovir therapy (AZT) at which time he was doing "well," with no weight loss. His psychologist, however, opined that the "stress of prison certainly has a negative effect" on defendant's condition. Similarly the prison chaplain sought to emphasize that AIDS inmates "are segregated from the main prison population in a very circumscribed environment" and that the prison was "not equipped to provide the kind of emotional support" needed for such patients. The Department of Corrections Health Services Coordinator indicated that its policy is to seek medical clemency relief where it is unable to "provide treatment for a critical illness, or when a patient is in imminent danger of death, not anticipated to survive" and implied that defendant did not yet meet this standard.
*129 Against this factual background, defendant insists that he has demonstrated that he is suffering from a fatal illness which is moderately advanced, and that continued incarceration will result in increased stress and a depreciation of his condition brought on by the forced segregation of such prisoners and reduced availability of visits from family members. Further the American Civil Liberties Union, as Amicus, urges that since medical science research has progressed only to the point where it probably "can do no more than slow the onset of death," the forced isolation of such prisoners makes that dying process "more bitter and more terrifying that it might otherwise be" if one were not confined to the prison AIDS unit.
It should be said at the outset that no court, including this one, can brush aside the humane considerations which have resulted in the very creation of the type of relief sought. State v. Tumminello, supra, 70 N.J. at 193. Yet, we are bound to consider society's interest in the outcome of what amounts to a sentencing decision here. State v. Priester, supra, 99 N.J. at 135. Defendant is a long time drug user who contracted this dreadful and fatal disease because of his unfortunate addiction. His present incarceration results from a crime of violence and his criminal record is unenviable. While the original sentencing judge was not aware of defendant's AIDS, he was cognizant of the general poor state of his health. The disease has progressed to the "moderately advanced" stage and has been controlled through AZT treatment administered by prison authorities. Although he is segregated from the general prison population there is no evidence to support the conclusion that he is in any danger of imminent death or that his continued confinement will hasten the progression of the disease before his parole eligibility date in December, 1987. While we recognize that stress is undoubtedly engendered by his confinement in the relatively restrictive environment of the AIDS unit, the only information in the record indicates that defendant has had little or no *130 contact with his family members for some time. In fact, we perceive that such stress might well be encountered by any inmate in a custodial setting. We find no evidence in the record to support the chaplain's statement that the institution cannot supply the "emotional support" which is available to this defendant outside of prison.
It is significant that no expert or other competent evidence was produced to indicate that the progress of the disease would be hastened by defendant's continued confinement for the relatively short time involved. Only what amounts to lay opinion regarding the impact of such a prison environment on defendant's emotional well being was presented. Our decision today does not constitute a statement that R. 3:21-10(b)(2) is inapplicable to AIDS inmates. Certainly, it is. However, AIDS inmates are not exempt from the requirement of having to establish their entitlement to such a release after consideration of the factors set forth in State v. Tumminello and State v. Priester, supra.
Here, we find that the trial judge simply fell wide of the mark in concluding that this defendant should be released from prison prior to his scheduled December parole date notwithstanding his otherwise good behavior and impressive involvement in anti-drug campaigns. If we were to establish the rule that every inmate who has contracted AIDS should be released, without regard to or consideration for the enumerated factors otherwise involved, we would be ignoring our sworn responsibilities under the law. This we will not do. On the record presented, defendant has failed to bear the burden necessary to effectuate his release pursuant to R. 3:21-10(b)(2).[2]State v. Priester, supra, 99 N.J. at 136.
Reversed.
NOTES
[1] During the course of rendering his oral opinion the trial judge recognized that he could only effectuate a release as opposed to a reduction of sentence. He also expressed the realization that his actions only amounted to granting early release some two or three months before defendant's parole eligibility date.
[2] Defendant's counsel has forwarded to us a report from Dr. Musikoff dated October 29, 1987 which obviously was not part of the record presented to the trial court. This is directly contrary to established appellate procedure. Defendant, of course, is free to renew his motion if he has additional evidence that he wants the trial judge to consider. State v. Sidoti, 120 N.J. Super. 208, 211 (App.Div. 1972).