570 A.2d 391

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MARK
JABBOUR, DEFENDANT-APPELLANT.

Argued October 24, 1989—Decided February 15, 1990.

*Susan W. Sciacca,* Assistant Prosecutor, argued the cause for appellant (*Larry J. McClure,* Bergen County Prosecutor, attorney).

*Nancy E. Lucianna* argued the cause for respondent (*Lucianna, Bierman & Stillman,* attorneys).

*Anne M. Patterson,* Special Assistant to the Attorney General, argued the cause for amicus curiae Attorney General (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney; *Mildred Vallerini Spiller* and *Debra L. Stone,* Deputies Attorney General, of counsel; *Mildred Vallerini Spiller,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal, like *State v. Johnson*, 118 *N.J.* 10, 395 *A.*2d 570 (1990), also decided today, centers on the propriety of sentencing a sex offender to a non-custodial sentence. In each case, the Law Division sentenced the defendant to a non-custodial term on the premise that imprisonment would constitute a "serious injustice" overriding the presumption of imprisonment applicable to first- and second-degree offenses. *N.J.S.A.* 2C:44–1d.

Defendant, Mark Jabbour, pled guilty pursuant to a plea agreement to one count of sexual assault in violation of *N.J. S.A.* 2C:14–2b. The trial court sentenced him to a five-year period of probation, conditioned on his receiving continued psychiatric treatment. In an unreported opinion, the Appellate Division affirmed. One member of the panel dissented, and the State appealed as of right. *R.* 2:2–1(a)(2). We reverse.

–I–

The offense occurred when defendant, who was employed as a housecleaner, was cleaning the home of the victim's family. His four-year-old victim was at home with her grandmother. While defendant was cleaning the victim's bedroom, she entered the room for a toy. Defendant asserts that as she entered the room, she brushed against him, causing him to become sexually aroused. In response, he pulled down his pants and forced her to masturbate him for approximately three minutes. According to the victim, however, defendant exposed his penis and asked her to bite it. When she refused, he laid her on the bed and placed his penis against her underwear, which was covering her vagina. He also placed his penis against her mouth in an unsuccessful attempt to force her to perform fellatio.

Defendant was indicted on one count of attempted aggravated assault in violation of *N.J.S.A.* 2C:14–2a(1) and 2C:5–1a(3), and three counts of sexual assault contrary to *N.J.S.A.* 2C:14–

4

2b. He agreed to plead guilty to one count of sexual assault for having forced the victim to touch his genitals. In exchange, the State recommended the dismissal of all other charges and the imposition of a sentence not to exceed a five-year custodial term. The actual sentence was five years' probation on condition that defendant continue to receive psychiatric care.

The trial court found as aggravating factors the victim's inability to resist due to her extreme youth, *N.J.S.A.* 2C:44–1a(2), and the need to deter others, *N.J.S.A.* 2C:44–1a(9). It also found a number of mitigating factors: defendant did not contemplate that his conduct would cause serious harm, *N.J.S.A.* 2C:44–1b(2); defendant had no prior history of criminal conduct, *N.J.S.A.* 2C:44–1b(7); the conduct was the result of circumstances unlikely to recur, *N.J.S.A.* 2C:44–1b(8); defendant was unlikely to commit another offense, *N.J.S.A.* 2C:44–1b(9); defendant was particularly likely to respond positively to a probational term, *N.J.S.A.* 2C:44–1b(10); and imprisonment would impose excessive hardship on defendant, *N.J.S.A.* 2C:44–1b(11). Balancing those factors, the trial court concluded that imprisoning defendant would be a serious injustice:

> Mr. Jabbour has impressed the Court as a sad, sorry, weak individual in need of psychiatric attention of such frequency and intensity as to be virtually impossible in a prison setting, since * * * in prison he will lose the momentum he has established. Moreover, this college graduate seems to be progressing toward a normal psyche and a useful, productive life. A period of incarceration will carry a high risk of his never overcoming his present emotional difficulties and achieving normalcy in his young adult years.

A divided Appellate Division panel affirmed. The court noted that the sentence reflected the trial court's awareness that defendant was convicted of a second-degree offense, which is subject to a presumption of imprisonment under *N.J.S.A.* 2C:44–1d. It concluded that the imposition of a non-custodial sentence was within the trial court's discretion. Judge Gruccio dissented. In his opinion, the trial court erred by focusing on the offender, rather than the offense. He also questioned the support for certain mitigating factors found by the trial court.

## –II–

This is another in a series of cases reviewing the judicial role in sentencing under the New Jersey Code of Criminal Justice (the Code). *State v. O'Donnell,* 117 *N.J.* 210, 564 *A.*2d 1202 (1989); *State v. Jarbath,* 114 *N.J.* 394, 555 *A.*2d 559 (1989); *State v. Kruse,* 105 *N.J.* 354, 521 *A.*2d 836 (1987); *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984). That role involves not only the different parts played by trial and appellate courts in sentencing decisions, but also the obligation of the judiciary to follow the Legislature's sentencing guidelines. When sentencing, the trial court must decide whether incarceration is warranted, taking into account the presumption for and against imprisonment. *See N.J.S.A.* 2C:44–1d and –1e; *Kruse, supra,* 105 *N.J.* at 358, 521 *A.*2d 836; *Roth, supra,* 95 *N.J.* at 357, 471 *A.*2d 370. Then the court must determine the length of the sentence. Although the Code channels the trial court's discretion by establishing presumptive terms based on the degree of the offense, *N.J.S.A.* 2C:44–1f(1), the court can adjust those terms after balancing the aggravating and mitigating factors. *N.J.S.A.* 2C:44–1a and –1b. The court may impose the statutory minimum or maximum sentence, depending on the preponderance of the mitigating or aggravating factors. *Roth, supra,* 95 *N.J.* at 359, 471 *A.*2d 370 (quoting *Fair and Certain Punishment, Report to the Twentieth Century Fund Task Force on Sentencing* 21 (1976)). Moreover, for crimes of the first and second degree, the court may sentence the defendant for an offense one degree lower than the crime for which he or she was convicted if it is "clearly convinced" that the mitigating factors "substantially outweigh" the aggravating factors. *N.J.S.A.* 2C:44–1f(2). If, however, the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, it may impose a period of parole ineligibility pursuant to *N.J.S.A.* 2C:43–6b. *See Roth, supra,* 95 *N.J.* at 356–61, 471 *A.*2d 370.

If a trial court follows the sentencing guidelines, an appellate court ought not second-guess the sentencing court's decision.

An appellate court "does not sit to substitute its judgment for that of the trial court." *O'Donnell, supra,* 117 *N.J.* at 215, 564 *A.*2d 1202. Consequently, appellate courts may review and modify sentences only when the trial court's determination was " 'clearly mistaken.' " *Jarbath, supra,* 114 *N.J.* at 401, 555 *A.*2d 559. Within these limitations, however, an appellate court

> can (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience. [*Roth, supra,* 95 *N.J.* at 364–65, 471 *A.*2d 370.]

At issue in the present case is the first requirement, the proper application of the sentencing guidelines. Those guidelines bespeak a different sentencing philosophy from that under prior law. The primary purpose of sentencing under the former Sex Offender Act, *N.J.S.A.* 2A:164–3 to –13, was rehabilitation of the defendant. In contrast, the purpose of the Code is punishment of sex offenders for their wrongful acts. *State v. Chapman,* 95 *N.J.* 582, 591–92, 472 *A.*2d 559 (1984).

To achieve that purpose, the Code focuses on "the gravity of the offense and not the blameworthiness of the offender." *Roth, supra,* 95 *N.J.* at 355, 471 *A.*2d 370; *State v. Hodge,* 95 *N.J.* 369, 377–79, 471 *A.*2d 389 (1984). In enacting the Code, the Legislature sought to promote uniformity in sentencing by channeling the discretion of trial courts. *Hodge, supra,* 95 *N.J.* at 375, 471 *A.*2d 389. The Code achieves that uniformity by emphasizing the severity of the crime, rather than the defendant's capacity for rehabilitation. *Ibid.; Roth, supra,* 95 *N.J.* at 355, 471 *A.*2d 370. Consistent with that approach, the Code establishes a presumption of imprisonment applicable to first- and second-degree crimes unless "having regard to the character and condition of the defendant, * * * imprisonment would be a serious injustice which overrides the need to deter such conduct by others." *N.J.S.A.* 2C:44–1d.

The "serious injustice" exception to the presumption of imprisonment applies only in " 'truly extraordinary and unanticipated circumstances.' " *Roth, supra,* 95 *N.J.* at 358, 471 *A.*2d 370. Thus, the presumption is not overcome merely because the defendant is a first offender or because the mitigating factors preponderate over the aggravating factors. *Id.* at 368, 471 *A.*2d 370; *State v. Kelly,* 97 *N.J.* 178, 219–20, 478 *A.*2d 364 (1984); *State v. Gonzalez,* 223 *N.J.Super.* 377, 393, 538 *A.*2d 1261 (App.Div.), certif. denied, 111 *N.J.* 589, 546 *A.*2d 514 (1988). Nor is the presumption overcome merely because the mitigating factors so outweigh the aggravating factors as to justify downgrading the offense. *N.J.S.A.* 2C:44–1f(2). In that setting, a trial court may reduce a prison term, but it still must imprison the defendant. *Jarbath, supra,* 114 *N.J.* at 413, 555 *A.*2d 559; *State v. Gerstofer,* 191 *N.J.Super.* 542, 546, 468 *A.*2d 436 (App.Div.1983), certif. denied, 96 *N.J.* 310, 475 *A.*2d 599 (1984). To avoid the presumption of imprisonment applicable to first- or second-degree offenses, the trial court must find that imprisonment would be a serious injustice that overrides the need to deter others. Rarely will general deterrence not be furthered by imprisonment for serious crimes. *Jarbath, supra,* 114 *N.J.* at 408, 555 *A.*2d 559. To forestall the deterrent effect of incarceration, the defendant must be idiosyncratic. *Ibid.*

The presumption of imprisonment, however, is not mandatory. *Jarbath, supra,* 114 *N.J.* at 407–08, 555 *A.*2d 559; *Roth, supra,* 95 *N.J.* at 358, 471 *A.*2d 370. Trial courts retain "a residuum of power * * * not to imprison in those few cases where it would be entirely inappropriate to do so." II *The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* § 2C:44–1 commentary at 326 (1971). That residuum is reserved for rare cases such as *Jarbath,* where imprisonment for a mentally-retarded woman convicted of second-degree manslaughter would have been a serious injustice because she "could not endure life in prison without unusual suffering, that is, hardship and privation greatly exceeding that which would be accepted and endured by

ordinary inmates * * *." 114 *N.J.* at 409, 555 *A.*2d 559. Only in such extraordinary circumstances may a defendant convicted of a first- or second-degree offense avoid a prison term.

■ Imprisonment generally results in hardship. It is not enough, however, that a defendant would find incarceration difficult. Given current prison conditions, punishment and deterrence may be the only legislative purposes served by incarceration. Prospects for rehabilitation do not justify a reduced penalty. As construed in *Roth, supra,* 95 *N.J.* at 367–68, 471 *A.*2d 370, the Code "removed judicial leeway to focus on the character and condition of the defendant in modifying sentences in order to enhance a defendant's prospects for rehabilitation." *Jarbath, supra,* 114 *N.J.* at 407, 555 *A.*2d 559. Defendants who commit serious crimes should expect to spend time in prison.

–III–

■ Defendant pled guilty to sexual assault, a second-degree offense, *N.J.S.A.* 2C:14–2b, which is subject to a presumptive term of seven years' imprisonment, *N.J.S.A.* 2C:44–1f(1)(c). When sentencing defendant, the trial court observed that defendant was "unfamiliar with life in the streets * * * and is in no way capable of enduring modern-day prison life." Because this is defendant's first brush with the law, his "previously blameless life evoke[s] compassion." *Roth, supra,* 95 *N.J.* at 368, 471 *A.*2d 370. As with other callow offenders faced with the stark reality of prison life, however, "[h]is situation, while regrettable, is not rare." *Ibid.* More to the point, the impact of a prison term on the defendant is not an argument that finds favor in the sentencing guidelines. As well-intentioned as the lower courts may have been in emphasizing the effect on defendant, their emphasis was misplaced. It may be, as the trial court stated, that "[a] period of incarceration will carry a high risk of [defendant's] never overcoming his present emotional difficulties and achieving normalcy in his young adult years." Incarceration, however, is the result ordained by the

Code. The focus in sentencing must be on the offense, not the offender. *See Hodge, supra,* 95 *N.J.* at 377, 471 *A.*2d 389. At times adherence to the sentencing guidelines may seem harsh, but "that is the consequence of the legislative scheme * * *." *State v. Dunbar,* 108 *N.J.* 80, 83, 527 *A.*2d 1346 (1987). In sum, the trial court erred by not following the sentencing guidelines.

█ The State has also challenged the trial court's findings on the mitigating factors. Two of those findings are problematic: that defendant's conduct was the result of circumstances unlikely to recur, *N.J.S.A.* 2C:44–1b(8), and that imprisonment would cause him excessive hardship, *N.J.S.A.* 2C:44–1b(11). In finding that the circumstances were unlikely to recur, the court relied on an Avenel report relating "that there are no indications that the offense for which Mr. Jabbour pleaded guilty is part of a repetitive, compulsive, deviant sexual behavior pattern and that this single criminal event was at least in part the result of a depressive episode he was experiencing at the time." Defendant's psychiatrist, however, concluded that defendant acted "impulsively." That conclusion raises the concern that defendant, if he found himself in a situation like the one underlying the present case, might act similarly. We do not say that result is a foregone conclusion, just that it is problematic. In the interests of resolving the matter on the best available information, the trial court might want to supplement the record on this factor. We have already discussed, *supra* at 7–8, 570 *A.*2d 393 the inadequacy of the support for the finding that imprisonment would cause defendant excessive hardship. That inadequacy need not preclude defendant from attempting to make a more expansive showing on remand.

The judgment of the Appellate Division is modified, and the matter is remanded to the Law Division for resentencing.

*For modification and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.