641 A.2d 1072

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. E.R., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 12, 1994—Decided May 11, 1994.

Before Judges PRESSLER, BROCHIN and KLEINER.

*Joseph R. Donahue,* Assistant Prosecutor, argued the cause for the appellant (*John J. Fahy,* Bergen County Prosecutor, attorney; *Mr. Donahue,* of counsel and on the letter brief).

*Donald T. Thelander,* Assistant Deputy Public Defender, argued the cause for the respondent (*Susan L. Reisner,* Acting Public Defender, attorney; *Mr. Thelander,* of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.S.C. (temporarily assigned).

On December 14, 1993, an amended judgment of conviction was imposed upon defendant, E.R., for two second degree crimes. By the terms of the amended judgment, the original judgment of conviction executed by the court on August 1, 1993 was vacated and defendant was resentenced to probation for a term of five years conditioned upon requirements that he report to probation by telephone and that he remain at his home at all times unless excused by order of the court or while visiting a hospital or doctor for medical treatment.[1]

The State contends the amended sentence violates the presumption of imprisonment for crimes of the first or second degree, *N.J.S.A.* 2C:44–1d, as interpreted in *State v. Jabbour,* 118 *N.J.* 1, 570 *A.*2d 391 (1990). Additionally it argues that the imposition of

---

[1] The State filed an appeal of this sentence on December 16, 1993 and an emergent application to stay the trial court judgment pending appeal. We denied the emergent application on December 17, 1993. The Supreme Court denied that same application on January 5, 1994. By supplemental order, January 14, 1994, the matter was placed on an accelerated schedule and was orally argued April 12, 1994.

any amended sentence was procedurally barred by the time constraints delineated in *R.* 3:21–10(a).

In this appeal we are called upon to determine whether a defendant with an uncontradicted prognosis of imminent death within six months due to an active disease process may be considered "idiosyncratic" so as "to forestall the deterrent effect of incarceration." We conclude that under the facts of this case, the defendant's medical status was appropriately considered by the sentencing judge and his discretionary decision to impose probation rather than incarceration was appropriate. *State v. Jabbour, id.* at 7, 570 *A.*2d 391; *State v. Roth,* 95 *N.J.* 334, 358, 471 *A.*2d 370 (1984). We also conclude that the imposition of an amended sentence did not violate *R.* 3:21–10(a). We therefore affirm.

Defendant was indicted for the following offenses: second degree possession for an unlawful purpose of destructive devices, described as four pipe bombs, contrary to *N.J.S.A.* 2C:39–4c (count one); third degree possession of a prohibited device described as four pipe bombs, contrary to *N.J.S.A.* 2C:39–3a (count two); second degree possession of cocaine with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1) (count three); and third degree possession of cocaine, contrary to *N.J.S.A.* 2C:35–10a(1) (count four).

Pursuant to a plea agreement in which the State agreed to dismiss counts two and four and a related disorderly persons offense and to recommend a sentence of eight years imprisonment, defendant on May 10, 1993 entered a plea of guilty to counts one and three of the indictment. On July 2, 1993, the trial judge sentenced defendant to a seven year custodial term without a period of parole disqualification on count one and a similar sentence on count three to be served concurrently with the sentence imposed on count one. The judgment of conviction was executed by the trial judge on August 1, 1993.

On August 31, 1993, defendant hand delivered to the trial judge a motion for reconsideration of sentence returnable before the court on September 24, 1993, seeking a reduction of sentence or

alternatively, the elimination of the custodial sentence originally imposed.

*R.* 3:21–10 permits a reduction or change of sentence in certain circumstances. Pertinent to this appeal are *R.* 3:21–10(a) and (b), which provide:

(a) Time. Except as provided in paragraph (b) hereof, a motion to reduce or change a sentence shall be filed not later than 60 days after the date of the judgment of conviction. The court may reduce or change a sentence, either on motion or on its own initiative, by order entered within 75 days from the date of the judgment of conviction and not thereafter.

(b) Exceptions. A motion may be filed and an order may be entered at any time (1) changing a custodial sentence to permit entry of the defendant into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse, or (2) amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant or (3) changing a sentence for good cause shown upon the joint application of the defendant and prosecuting attorney, or (4) changing a sentence as authorized by the Code of Criminal Justice, or (5) changing a custodial sentence to permit entry into the Intensive Supervision Program.

■ The original sentence was imposed upon defendant on July 2, 1993, however, the judgment of conviction was signed on August 1, 1993. A judgment is only effective when signed by the judge and entered by the clerk. *R.* 3:21–5; *see also* Pressler, *Current N.J. Court Rules,* comment on *R.* 3:21–5 (1994). Defendant's motion as filed was timely. *R.* 3:21–10(a). Although the clerk's office did not receive this motion for filing until September 10, 1993, defendant utilized the filing alternative embodied in *R.* 1:5–6(b) by delivery of the motion to the judge's chambers.[2] In its appeal, the State also stresses as a procedural deficiency that the resentencing on December 14, 1993 was beyond the strict time limitation of seventy-five days imposed by *R.* 3:21–10(a). Ordinarily the time limitations of *R.* 3:21–10(a) must be strictly en-

---

[2] The timely filing issue was correctly resolved by the trial court's determination of a factual dispute raised by the State. Apparently after the original notice of motion was marked filed and initialled by the trial court on August 31, 1993, it was properly filed in the clerk's office and was marked filed on receipt bearing a date September 14, 1993. *R.* 1:5–6(b) would require that we consider the motion filed as of August 31, 1993, thus complying with the filing time requirement of *R.* 3:21–10(a).

forced, *State v. Edwards*, 184 *N.J.Super.* 538, 541, 446 *A.*2d 1217 (App.Div.1982); *State v. Sanducci*, 167 *N.J.Super.* 503, 511, 401 *A.*2d 274 (App.Div.), *certif. denied*, 82 *N.J.* 263, 412 *A.*2d 770 (1979); *State v. Tully*, 148 *N.J.Super.* 558, 562, 372 *A.*2d 1323 (App.Div.), *certif. denied*, 75 *N.J.* 9, 379 *A.*2d 240 (1977), and may not be enlarged, *R.* 1:3–4(c).

The procedural focus in this appeal is similar to the problem discussed in *State v. Alvarado*, 95 *N.J.Super.* 595, 232 *A.*2d 184 (App.Div.1967), *aff'd*, 51 *N.J.* 375, 240 *A.*2d 677 (1968). *Alvarado* dealt with the predecessor to *R.* 3:21–10, formerly *R.R.* 3:7–13,[3] which in pertinent part provided, "The court may reduce or change a sentence by order entered not later than 60 days from the date of the judgment of conviction...." Alvarado was sentenced on June 27, 1966. He filed a timely motion for reduction of sentence on August 22, 1966, returnable August 26, 1966. However, the sentencing judge was on vacation until September 12, 1966 and the motion was carried by the assignment judge until September 16, 1966. The sentencing judge then denied the motion on procedural grounds as the sixty day time constraint of *R.R.* 3:7–13 could not be enlarged by mandate of *R.R.* 1:27B(c).[4] In reversing that decision, the Appellate Division stated:

[W]hile the rule literally requires the order for relief to be "entered" not later than 60 days from sentence, we take this as evincing a directory intent in relation to the judge but not a jurisdictional bar as against an applicant for relief who has filed his motion well within the 60–day period specified. It is not reasonable to impute to the rule an intent to proffer to a defendant a means for obtaining sentencing relief

---

[3] *R.R.* 3:7–13 was amended September 26, 1967, effective October 5, 1967, to extend the time for entry of an amendment to a sentence from sixty days to seventy-five days.

[4] *R.R.* 1:27B provided: "When an act is required or allowed to be done at or within a specified time,—

(a) ...

(b) ...

(c) Neither the court nor the parties may enlarge the period for taking any action under *Rules* 3:7–11; 3:7–12; *3:7–13;* 4:51–2; 4:53–2; 4:61–2; 4:61–4; 4:61–6; 4:62–2 and 8:7–11."

[Emphasis supplied.]

with one hand and to deprive him of its benefit with the other on the unjust basis of another's failure to comply with a time directive. In so holding, however, we point out that the directory policy of the rule is a strong one and that the bench should be at pains to comply with it punctiliously.

[*Id.* at 597, 232 *A.*2d 184.]

To accommodate the purpose of the rule permitting a reduction of sentence, the Appellate Division was required to relax the time constraints of the rule despite the prohibition in *R.R.* 1:27B(c). The Supreme Court affirmed that rare action. 51 *N.J.* at 376, 240 *A.*2d 677.

In this matter the motion was initially returnable on September 24, 1993 (the fifty-fourth day after the judgment of conviction), and was continued to October 15, 1993 (the seventh-fifth day after the judgment of conviction), the final date for judicial action permissible under *R.* 3:21–10(a). The order continuing the motion was submitted with the consent of the prosecutor and was signed October 1, 1993. That order also required that defendant be transported to the Bergen Pines County Hospital for a current medical evaluation and that a current medical report be submitted to the court. Due to a lack of response by the medical personnel involved in the evaluation, the court again continued the motion until October 29, December 2, and then to December 19, 1993. When the reports requested arrived prior to December 19, 1993, the motion was accelerated and was argued and granted on December 14, 1993 resulting in the imposition of an amended judgment of conviction.

█ Defendant's motion was timely filed on August 31, 1993. The original return date of his motion as filed would have resulted in a timely decision as required by *R.* 3:21–10(a). Unlike *State v. Tully, supra,* 148 *N.J.Super.* at 561, 372 *A.*2d 1323, where a similar motion was denied after defendant sought a delay in the disposition of the motion, here defendant took no active role in the delay from the initial scheduled date on September 24, 1993, to the actual date of decision on December 14, 1993. The delay was occasioned by the court's decision, *sua sponte,* to gather the latest

pertinent medical information, including an up-to-date medical evaluation of defendant, to assist the court in properly considering this unusual motion. This defendant should not be penalized because the trial judge properly postponed disposition of this motion based on his desire to have the benefit of all requisite current medical information.

■ On July 2, 1993, in imposing the original custodial sentence, the court properly considered the aggravating and mitigating factors as required. *N.J.S.A.* 2C:44-1. The court determined that aggravating factors (1) "[t]he nature and circumstances of the offense, and the role of the actor therein including whether or not it was committed in an especially heinous, cruel, or depraved manner," (6) "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted," and (9) "[t]he need for deterring the defendant and others from violating the law" were appropriate considerations.

Defendant pled guilty to two separate second degree crimes for which there is a presumptive sentence of seven years, *N.J.S.A.* 2C:44–1f(1)(c), and the court was entitled to consider that the four pipe bombs in defendant's possession at the time of his arrest were capable of detonation.

Defendant's prior arrest and conviction record indicated that in 1977, at age twenty, he had been sentenced to New Jersey State Prison for a term of five years for burglary which had been suspended on condition that defendant enter and complete a drug rehabilitation program for his heroin addiction. Because of defendant's violation of that term of probation defendant was cited for violating probation in 1978. His probationary term was continued, to again permit him to receive treatment for his heroin addiction. The court in July 1993 was also entitled to consider that defendant's record reflected two outstanding unresolved matters: a warrant had been issued by the State of New York on June 20, 1980 for "possession of narcotic equipment," and a disorderly persons offense in Garfield, New Jersey, dated September 3, 1986, was unresolved. Defendant's prior heroin addiction, his prior

criminal convictions, his present plea of guilty to possession of cocaine with intent to distribute, clearly justified the court's conclusion that aggravating factors (6) and (9) were appropriate considerations.

As mitigating factors, *N.J.S.A.* 2C:44–1b, the court determined that factors (10) "[t]he defendant is particularly likely to respond affirmatively to probationary treatment," and (11) "[t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents" were applicable.

Factor (10) was appropriate as defendant, then age thirty-six, had not been charged with a new substantive offense in New Jersey between 1977 and 1991, and although totally disabled under the qualifying standards of Social Security, had been gainfully employed prior to his disability. These factors are appropriate considerations when evaluating a defendant's eligibility for or amenability to probation. Defendant's presentence report also indicated that he had been married until 1991, was the father of three children, ages ten, nine and eight, who resided with their mother, and was contributing from his disability payments to the support of his elderly mother.

Of utmost importance was the inclusion within the presentence report of the following: "The Defendant has a body rash and suffers from AIDS. In July of 1992 he was treated for Pneumocystis Carinni Pneumonia, a consequence of this condition. The Defendant is treated at Englewood Hospital. He also states that he suffers muscle loss." The defendant's health obviously was a consideration in the court's conclusion that "imprisonment ... would entail excessive hardship" to defendant.

A transcript of defendant's original sentencing on July 2, 1993 was not presented to this court on appeal. We note that although the State has argued on appeal that the court was cognizant that defendant was suffering from AIDS, it has not argued nor referenced any aspect of the original sentencing proceeding which would demonstrate that defendant's medical status was a signifi-

cant impetus in the court's decision to impose the presumptive term of seven years as its original sentence.

In contrast to the meager medical information provided to the court in July 1993 in the presentence report, the court received substantial medical information prior to the amended judgment of conviction in December 14, 1993. By letter dated August 2, 1993, Dr. Richard Grady, Medical Director at the Bergen County Jail, stated:

> I cannot estimate with precision [E.R.'s] life expectancy. Because of the fact that he has had one major complication of acquired immune deficiency syndrome—pneumocystic carinii pneumonia in August 1992—and presently has a very low CD4 lymphocyte count which indicates that he has very limited ability to resist infection, it is unlikely that he will survive for 5 years and possible that he may not survive for 2 to 3 years. There is so much that is not known about the course of this disease that I cannot offer a more definite estimate.

By letter dated November 18, 1993, Dr. Peter A. Luongo, who treated defendant while defendant was a patient at the Bergen County Pines Hospital in September 1993, indicated that defendant's CD4 count performed three months prior to defendant's hospitalization was less than 100. He explained that while AIDS patients with CD4 counts above 200 (more often above 500) have a longer period of survival (perhaps up to ten years), patients with CD4 counts of less than 200 have a decreased life expectancy, although the literature on this issue varies. Dr. Luongo concluded his letter with the following: "The prognosis for [E.R.] is, therefore grave. The probability of him surviving one year is about 25–30%. Though there are some exceptions to these estimates."

Defendant was hospitalized again between November 20, 1993 and December 1, 1993. By letter dated December 7, 1993, Dr. Irwin L. Rhine of Bergen Pines County Hospital advised the court that defendant had "advanced AIDS," had lost considerable weight, and was bedridden. Dr. Rhine also explained that defendant's T4 cells were at that time below 6, whereas the normal range is about 1,000. "This gives [E.R.] an extremely poor prognosis for living less than six months. He is extremely emaciated and subject to frequent life threatening infections."

Dr. Miquel Nunez, who had treated defendant during a prior hospitalization in July 1992 at Englewood Hospital, reviewed defendant's more current records and conferred with Dr. Rhine. Dr. Nunez indicated that based on the fact that defendant was suffering from HIV neuropathy, severe anemia, and leukopenia,[5] "[i]t is quite possible that [defendant's] survival would be less than six months."

Defendant provided a certification to the court dated August 31, 1993 as part of his initial motion papers which indicated that he weighed 105 pounds on that date and stated in pertinent part:

I am certainly not capable at this point and time of engaging in any criminal activity, as my stamina is virtually non existent. Simply walking 100 feet exhausts me to the point where I have to sit or lay down for at least an hour and this is deteriorating.

On December 14, 1993, defendant's former wife, a registered nurse, and his sister appeared before the court. Defendant's former wife indicated that if defendant were released, he would reside in her home with the couple's three children. She would provide continuous supervision to defendant and a home health care worker provided by an agency in Hackensack would be present for four to five hours per day, five days each week. Defendant's sister and mother, who live one block from defendant's intended residence, also indicated an intention to assist in defendant's care if released from custody.

In *State v. Jabbour, supra,* 118 *N.J.* at 7, 570 *A.*2d 391, the Supreme Court stated:

To avoid the presumption of imprisonment applicable to first- or second-degree offenses, the trial court must find that imprisonment would be a serious injustice that overrides the need to deter others. Rarely will general deterrence not be furthered by imprisonment for serious crimes. To forestall the deterrent effect of incarceration, the defendant must be idiosyncratic.

The presumption of imprisonment, however, is not mandatory. Trial courts retain "a residuum of power * * * not to imprison in those few cases where it would be entirely inappropriate to do so."

[Citations omitted.]

---

[5] Defined as a reduction in the number of leukocytes (white blood cells) in the blood. *Dorland's Illustrated Medical Dictionary* 746, 747 (23d ed. 1957).

With full deference to *State v. Roth, supra,* 95 *N.J.* at 358, 471 *A.*2d 370, and *State v. Jabbour, supra,* 118 *N.J.* at 7, 570 *A.*2d 391, which cited *Roth,* the trial judge at the second sentencing again reviewed the appropriate considerations necessary for the imposition of the amended sentence. The trial judge emphasized the drastic and obvious sudden change in defendant's condition:

We didn't have someone in that condition when the sentence was imposed.

In fact, when [defendant] came back on October 1st, he had been sentenced on July 2nd, I didn't recognize him. I didn't know who he was. I thought they were bringing in someone else.

So, while we were aware of his condition when we found out about it, we didn't know that it would be an excessive hardship, not to the extent that we believed at the time or that existed at the time.

The judge specifically concluded that not only would continued incarceration be an excessive hardship, *N.J.S.A.* 2C:44–1b(11), it was explicitly inappropriate considering defendant's imminent death. The court also concluded that due to defendant's medical condition, he was no longer at risk to commit another offense and incarceration was not required as a deterrent to the defendant.

Although the court emphasized that the nature of the offenses committed still constituted an aggravating factor, *N.J.S.A.* 2C:44–1a(1), as well as defendant's prior record and the need to deter others, it concluded that the mitigating factors "strongly outweighed" the aggravating factors and that imprisonment would be a "serious injustice" which overrides the need to deter others. *N.J.S.A.* 2C:44–1d; *State v. Roth, supra,* 95 *N.J.* at 358, 471 *A.*2d 370; *see also State v. Hodge,* 95 *N.J.* 369, 471 *A.*2d 389 (1984).

We note that the sentencing judge also imposed a sentence with substantial deference to the concepts of general and specific deterrence. The probation imposed was extremely restrictive. Defendant may not leave his home without permission of the court except to receive medical treatment. Heeding to the presumption of imprisonment would merely transfer defendant from the confines of his bed at home to the confines of a bed within a hospital setting. His medical care in a hospital presumptively will be

superior to medical care provided by a home health care worker. We conceive, however, that confinement at home, surrounded by his children, former wife, mother and sister will provide a comfort which can never be provided in a prison hospital. Faced with those alternatives, we do not conclude that the sentence deprecates the importance of the presumption of imprisonment as a general deterrent. We liken the decision here to the recognition by the Supreme Court that the deficient mental and emotional condition of Gloria Jarbath constituted an appropriate consideration rendering her so idiosyncratic that incarceration for the purpose of general deterrence was not warranted. *State v. Jarbath*, 114 *N.J.* 394, 408, 555 *A.*2d 559 (1989).

The State also argues that resentencing defendant due to his deteriorated condition will open the "floodgates" to thousands of other HIV-positive inmates with legally indistinguishable claims. Although the State's concern is legitimate, the standards established for a prisoner's release due to his medical condition on an application under *R.* 3:21–10(b)(2) are very precise. *See State v. Priester*, 99 *N.J.* 123, 135–37, 491 *A.*2d 650 (1985); *State v. Tumminello*, 70 *N.J.* 187, 192–94, 358 *A.*2d 769 (1976); *State v. Wright*, 221 *N.J.Super.* 123, 130, 534 *A.*2d 31 (App.Div.1987). There are few defendants, however, who will be entitled to relief under *R.* 3:21–10(a) and the State's concern is therefore overstated. *Cf. State v. Kent*, 212 *N.J.Super.* 635, 641–42, 515 *A.*2d 1275 (App.Div.1986) (in view of large number of inmates with drug and alcohol abuse problems, a change in circumstances is necessary in order to release a defendant under *R.* 3:10–21(b)(1) for rehabilitation). Additionally, it is not mandatory that trial courts grant AIDS-infected inmates or any inmate relief requested on a motion filed pursuant to *R.* 3:21–10(a). The decision to grant relief here was within the sound discretion of the trial court. *State v. Roth, supra,* 95 *N.J.* at 358, 471 *A.*2d 370. The judge exercised that discretion within the parameters of the sentencing guidelines for a crime of the second degree due to the unusual medical condition of this defendant which rendered his status

extraordinary and "idiosyncratic." *State v. Jabbour, supra,* 118 *N.J.* at 7, 570 *A.2d* 391.

The judgment of conviction imposed on resentencing is affirmed.

BROCHIN, J.A.D. (dissenting).

Critical to my colleagues' opinion is their holding that the facts which were brought to the attention of the sentencing judge at defendant E.R.'s re-sentencing would have justified a probationary sentence initially. I disagree with that holding and therefore respectfully dissent.

Defendant E.R. was convicted of two second-degree crimes. He was therefore subject to a "presumption of imprisonment applicable to first and second-degree crimes unless 'having regard to the character and condition of the defendant, ... imprisonment would be a serious injustice which overrides the need to deter such conduct by others.'" *State v. Jabbour,* 118 *N.J.* 1, 6, 570 *A.2d* 391 (1990) (quoting *N.J.S.A.* 2C:44–1d). The further teaching of *Jabbour,* which in my view is applicable to the present case, is the following:

> .... [T]he impact of a prison term on the defendant is not an argument that finds favor in the sentencing guidelines. As well-intentioned as the lower courts may have been in emphasizing the effect on defendant, their emphasis was misplaced.... Incarceration, however, is the result ordained by the Code. The focusing in sentencing must be on the offense, not the offender. [Citation omitted.] At times adherence to the sentencing guidelines may seem harsh, but "that is the consequence of the legislative scheme...." *State v. Dunbar,* 108 *N.J.* 80, 83, 527 *A.2d* 1346 (1987). In sum, the trial court erred by not following the sentencing guidelines.
>
> [*Jabbour, supra,* 118 *N.J.* at 8–9, 570 *A.2d* 391.]

Arguably defendant's tragic situation warrants clemency. However, New Jersey law does not authorize judges to grant clemency. That is a power reserved for the executive branch. Our duty is to sentence in accordance with the New Jersey Criminal Code. Because, in my opinion, the sentence imposed on the defendant departs from the Code, I would reverse and reimpose the original sentence.