**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3840-19T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GLENN P. SEELER,

     Defendant-Appellant.

_____

           Submitted September 16, 2020 – Decided September 24, 2020

           Before Judges Alvarez and Geiger.

           On appeal from the Superior Court of New Jersey, Law Division, Criminal Part, Atlantic County, Indictment No. 18-04-0517.

           Timothy P. Reilly, attorney for appellant.

           Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Nicole L. Campellone, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

     Defendant Glenn P. Seeler appeals from a June 9, 2020 Criminal Part order denying his motion for release from imprisonment under Rule 3:21-

10(b)(2). He claims he is subject to an enhanced risk of serious medical complications if he contracts COVID-19 because of his underlying medical conditions that include hypertension and diabetes.

We derive the following facts from the record. In 2002, defendant, who was a member of the Pagan's Motorcycle Gang, became involved with Dr. James Kauffman in a scheme to distribute Oxycodone, a controlled dangerous substance (CDS). Kauffman supplied prescriptions for Oxycodone which was then sold by defendant and his co-defendants.

An Atlantic County Grand Jury returned an indictment charging defendant with first-degree racketeering, third-degree distribution of CDS, and third-degree conspiracy to distribute CDS. Pursuant to the terms of a plea agreement, defendant entered an open guilty plea to an amended charge of second-degree racketeering, N.J.S.A. 2C:41-2(c), (d), relating to his involvement in the drug distribution enterprise. The plea agreement called for sentencing in the courts discretion and was conditioned upon defendant's truthful testimony against his co-defendant, Ferdinand Augello.[1]

Defendant was sentenced on February 21, 2019. The sentencing judge found aggravating factors three (risk of re-offense) and nine (need for

[1] Augello, the former president of the Pagans Motorcycle Gang, was convicted of murder, racketeering, and leader of a narcotics network, and is serving a life sentence.

deterrence), N.J.S.A. 2C:44-1(a)(3) and (9), and mitigating factors seven (defendant led a law-abiding life for a substantial period of time before committing the offense),[2] eleven (imprisonment would entail excessive hardship), and twelve (cooperation with law enforcement), N.J.S.A. 2C:44-1(b)(7), (11) and (12), with the mitigating factors substantially outweighing the aggravating factors. Finding that the interests of justice demanded sentencing defendant a degree lower, the judge sentenced defendant to a three-year prison term. The other counts were dismissed. Defendant did not appeal his conviction or sentence.

The court recommended that the Department of Corrections (DOC) take into consideration defendant's physical limitations when evaluating him for appropriate placement. It also recommended that defendant be admitted to parole or supervised release at the earliest legal opportunity and "consent[ed] to a reduction of the primary parole eligibility date pursuant to N.J.S.A. 30:4-123.67."

Defendant was initially eligible for parole on October 27, 2019. The State Parole Board's (Board) initial case assessment noted that defendant was a member of the Pagans Motorcycle Gang. On December 18, 2019, the Board

---

[2] Defendant has a prior conviction for possession of a prohibited weapon (stun gun), for which he received probation.

issued a final decision affirming a Board panel's decision denying parole and imposing a fourteen-month Future Eligibility Term.[3] The Board found that defendant exhibits insufficient problem resolution, lacks insight into his criminal behavior, minimizes his conduct, and that his substance abuse has not been sufficiently addressed. The Board determined "that a preponderance of the evidence indicates that there is a reasonable expectation that [defendant] would violate the conditions of parole if released on parole at this time." It noted that "[t]he sentencing judge's commentary is not binding on the Board." Defendant's appeal from that decision is presently pending.

Defendant is now forty years old and has a history of substance abuse. He suffers from type-2 diabetes, hypertension, chronic pain syndrome, post-laminectomy syndrome, lumbar pain with radiculopathy, and spinal stenosis. Defendant underwent lumber spinal surgery for a herniated disk.

In June 2020, defendant moved for release from imprisonment under Rule 3:21-10(b)(2). He argued that release on condition of house arrest is appropriate. Defendant submitted a certification of his counsel, with attachments that included certain medical records and "declarations" of Dr. Jonathan Louis Golob, a specialist in infectious diseases and internal medicine, and Dr. Robert B. Greifinger, a physician who has worked in inmate health

_____

[3] The motion judge noted defendant is eligible for parole in December 2020.

care and is an independent consultant on prison and jail health care. Neither declaration was based on an examination of defendant nor otherwise specific to him or the prison he is assigned to.

Dr. Golob's declaration states that the Center for Disease Control (CDC) advised that diabetes "increase[s] the risk of serious COVID-19 for people of any age." He opines that people with diabetes who reside in a prison "with limited access to adequate hygiene facilities, limited ability to physically distance themselves from others, and exposure to potentially infected individuals from the community are at grave risk of severe illness and death from COVID-19."

Dr. Greifinger's declaration likewise states that the CDC has identified diabetes as a "medical condition that may increase the risk of serious COVID-19 for individuals of any age." His declaration did not include any analysis of risks faced by inmates imprisoned in New Jersey.

Defendant asserted the has no prison disciplinary infractions, has achieved satisfactory prison adjustment, and maintains minimum custody status. He now has less than a year to serve before he completes his sentence.

The prosecutor acknowledged that defendant is serving a sentence for an offense committed eight years ago, has remained offense-free since, and his

risk of reoffending could be found to be minimal. The prosecutor did not identify any factors militating against release but opposed the motion.

On June 9, 2020, the motion court issued an order, a lengthy oral decision, and a nineteen-page statement of reasons denying defendant's motion. The court found "[d]efendant did not present any evidence that the pandemic was having a 'deleterious effect' on his medical condition or actual health and did not show that medical services unavailable at the prison would be essential to prevent further deterioration of his health." It concluded that defendant presented "a generalized fear of contracting" COVID-19.

The motion court determined that defendant demonstrated that COVID-19 has infiltrated the prison system, including the facilities where defendant is serving his sentence. It further determined that defendant proved "persons with compromised immune systems are at a higher risk of contracting [COVID]-19 and suffering serious health ramifications, including death."

The court recognized that the advent of COVID-19 was a change of circumstances that occurred since defendant was sentenced but noted "the DOC has taken efforts to mitigate and protect against the spread of the disease." The court also found that the sentencing judge thoroughly considered defendant's health conditions when he sentenced him a degree lower in the third-degree range.

As to the nature and severity of defendant's crime and sentence, the court noted that defendant, "while a member of the Pagans Motorcycle Gang, engaged in a scheme to distribute [CDS], in particular opiates, through the gang's association with Dr. Kauffman." The court described the drug distribution scheme as "far-reaching," resulting in defendant initially being charged with first-degree racketeering and subsequently pleading guilty to second-degree racketeering, "a very serious offense" that "strongly weighs against [d]efendant's application." Defendant's association with the motorcycle gang raised the "concern that he is a danger to re-engage with the gang if released." The court concluded that "[d]efendant still presents a risk to public safety."

The motion court concluded this was not a case in which release from prison should be granted. After reviewing and balancing each of the factors set forth in State v. Priester, 99 N.J. 123, 135-37 (1985), the court found "the seriousness of [d]efendant's offense and risk to the public overwhelming[ly] outweigh any factors in favor of relief." This appeal followed.

Defendant raises a single point for our consideration:

> THE ORDER DENYING A CHANGE OF SENTENCE SHOULD BE REVERSED SINCE THE MOTION COURT ABUSED IT'S DISCRETION IN DENYING RELEASE FROM CUSTODY TO DEFENDANT, GLENN SEELER, SINCE HE HAS MET ALL THE REQUIREMENTS OF [RULE] 3:21-

10(b)(2) AND <u>STATE V. PRIESTER</u>, 99 N.J. 123 (1985).

<u>Rule</u> 3:21-10(b)(2) permits an inmate to move at any time to amend a custodial sentence to permit release from incarceration because of illness or infirmity. Courts apply a balancing test to determine whether relief should be granted under the rule. <u>Priester</u>, 99 N.J. at 135-37.

Generally, to obtain such "extraordinary relief" under the rule, a defendant must show: (1) he suffers from a serious medical condition and the negative impact incarceration has on his health; and (2) a change in circumstances between the time of sentencing and the motion. <u>Id.</u> at 135-36. When determining whether release is appropriate, the factors that courts consider include:

> "the serious nature of the defendant's illness and the deleterious effect of incarceration on the prisoner's health"; "the availability of medical services in prison"; "the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, [and] the risk to the public if the defendant is released."
>
> [<u>In re Request to Modify Prison Sentences, Expedite Parole Hearings & Identify Vulnerable Inmates</u>, ___N.J. ___, ___ (2020) (slip op. at 20) (quoting <u>Priester</u>, 99 N.J. at 135-37).]

In the context of the COVID-19 pandemic, "the nature of the inmate's illness and the effect of continued incarceration on his health -- are [t]he

'[p]redicate for relief.'" Ibid. (alteration in original) (quoting Priester, 99 N.J. at 135). An inmate seeking relief under the rule must present "evidence of both an 'illness or infirmity' -- a physical ailment or weakness -- and the increased risk of harm incarceration poses to that condition. A generalized fear of contracting an illness is not enough." Id. at 20-21. The Court further held that the COVID-19 pandemic constitutes a change in circumstances under Rule 3:21-10(b)(2). Id. at 21. The Court noted, however, that the rule does not "provide authority for the courts to establish and oversee a broad-based program to release or furlough inmates in state prison." Id. at 5.

"A motion made pursuant to Rule 3:21-10(b)(2) is committed to the sound discretion of the court." Priester, 99 N.J. at 135 (citing State v. Tumminello, 70 N.J. 187, 193 (1976)). We review decisions granting or denying relief under the rule for abuse of that discretion. Id. at 137. An abuse of discretion occurs when a trial court makes "findings inconsistent with or unsupported by competent evidence," utilizes "irrelevant or inappropriate factors," or "fail[s] to consider controlling legal principles." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (citations and internal quotation marks omitted). An abuse of discretion can also be found if the court "fails to consider relevant factors[,] and when its decision reflects a clear error in

judgment." State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017) (quoting State v. Baynes, 148 N.J. 434, 444 (1997)).

It is undisputed that both diabetes and hypertension place defendant at greater risk of complications if he contracts COVID-19. It is also clear that defendant is at greater risk of contracting COVID-19 in prison, in part because of the inability of inmates to socially distance from one another.[4]

Defendant has less than one year left on his sentence. As recognized by the motion judge, defendant is eligible for parole in December 2020. He committed a serious, but non-violent second-degree crime.

Defendant does not claim "that the medical services unavailable at the prison would be not only beneficial . . . but are essential to prevent further deterioration in his health." Priester, 99 N.J. at 135. Nor does he claim his medical condition is rapidly deteriorating. See Tumminello, 70 N.J. at 193 (holding that medical evidence clearly established that the defendant's condition was rapidly deteriorating, and his health would be placed in greater danger by incarceration). Instead, defendant claims that he is vulnerable to

---

[4] The risks posed by COVID-19 "are amplified in jail settings." In re Request to Modify Prison Sentences, slip op. at 7. As noted by the Court, "[a]s of June 1, 2020, out of a total population of 15,302 inmates in state prison, 1720 had tested positive for the virus, about 192 had been hospitalized, and 46 had died. Up to 737 out of 8008 staff members had also tested positive." Id. at 2.

serious medical complications if he contracts COVID-19 due to his underlying hypertension and diabetes.

The record shows defendant is prescribed medication for his hypertension and type-2 diabetes. Notably, defendant does not contend that treatment is ineffective or that his hypertension and diabetes is not under control.[5]

We recognize that the sentencing judge found mitigating factors eleven and twelve, recommended the DOC consider defendant's physical limitations when evaluating him for appropriate placement, and recommended defendant be admitted to parole or supervised release at the earliest legal opportunity. We attribute these recommendations to defendant's significant orthopedic conditions and his cooperation with law enforcement in the case against the co-defendant rather than his hypertension and diabetes. Indeed, defendant did not produce any evidence or expert opinion that his orthopedic conditions enhances his risk of serious medical complications from COVID-19.

Recognizing that a sentencing amendment under Rule 3:21-10(b)(2) "must be applied prudently, sparingly, and cautiously," Priester, 99 N.J. at 135,

---

[5] In fact, with regard to mitigating factor eleven, the Judgement of Conviction states defendant "is under a physician[']s care for chronic conditions. . . . [H]owever, none of them are out of the ordinary and are not sufficient to overcome the presumption of imprisonment for a second-degree offense."

we determine the motion court did not abuse its discretion in denying the motion, see id. at 137; Tumminello, 70 N.J. at 193. The record shows that defendant's diabetes and hypertension are effectively treated through medication administered to him in prison. See Priester, 99 N.J. at 135-36; State v. Wright, 221 N.J. Super. 123, 127 (App. Div. 1987) (stating the factors to be weighed include "the nature of th[e] illness and the availability of appropriate medical services in prison to adequately treat or cope with that illness"). While he claims that he is at enhanced risk of contracting COVID-19 in prison and suffering serious medical complications if that occurs, his medical condition is not rapidly deteriorating. Unlike the defendant in Tumminello, whose worsening diabetes necessitated multiple amputations and subjected him to the risk of ulcerations and infections due to the inability to maintain sanitary conditions, 70 N.J. at 190, defendant has not presented any medical evidence that his condition deteriorated during the months leading up to the motion hearing. Nor has defendant shown that the DOC is unable to satisfactorily address his medical needs. Moreover, defendant's medical conditions were known to the sentencing court.

Defendant has not provided evidence relating to the impact of the prison environment on his diabetes and hypertension. See Wright, 221 N.J. Super. at 130 (noting that "no expert or other competent evidence was produced to

A-3840-19T4

indicate that the progress of the disease would be hastened by defendant's continued confinement for the relatively short time involved").  Nor has he established "that the medical services unavailable at the prison would be not only beneficial . . . but are essential to prevent further deterioration in his health."  Priester, 99 N.J. at 135.

"A generalized fear of contracting an illness is not enough."  In re Request to Modify Prison Sentences, slip op. at 21.  To prevail on a Rule 3:21-10(b)(2) motion, an inmate must "present evidence of both an 'illness or infirmity' . . . and the increased risk of harm incarceration poses to that condition."  Id. at 20-21.

Being type-2 diabetic and hypertensive, with those conditions controlled by medication administered to the inmate, does not automatically warrant relief under the rule.  The motion court properly considered the pertinent factors and did not abuse its discretion in balancing those factors and denying defendant's motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION