785 A.2d 934 (2001)
345 N.J. Super. 480
STATE of New Jersey, Plaintiff-Appellant/Cross-Respondent,
v.
Joseph A. COOKE, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 16, 2001.
Decided December 13, 2001.
*935 *936 Peter A. Garcia, Acting Public Defender, for appellant (William Welaj, Designated Counsel, of counsel and on the brief).
William H. Schmidt, Bergen County Prosecutor, for respondent (Jessica A. Gomperts, Assistant Prosecutor, of counsel and on the brief).
Before Judges EICHEN, COLLESTER and LINTNER.
The opinion of the court was delivered by COLLESTER, J.A.D.
Tried to a jury, defendant Joseph A. Cooke was convicted of second degree sexual assault, contrary to N.J.S.A. 2C:14-2c(2). He received a sentence of three years probation, a $50 VCCB penalty, a $75 Safe Neighborhood penalty and a $30 LEOTEF penalty. The State has appealed the sentence, and defendant has crossappealed from his conviction.
On January 21, 1998, a Bergen County grand jury returned Indictment No. S108-98, charging defendant with two counts of second degree burglary, contrary to N.J.S.A. 2C:18-2 (counts I and IV); two counts of first degree aggravated sexual assault, contrary to N.J.S.A. 2C:14-2a(3), (counts II and V); and two counts of second degree sexual assault, contrary to N.J.S.A. 2C:14-2c(2), (counts III and VI). Defendant entered a plea of not guilty. His motion to suppress his statements to the police was denied.
The State's proofs at trial were that on August 3, 1997, at about 1:00 a.m. the victim L.B. fell asleep on his living room couch in a house he shared in Rutherford. He awoke because a man was performing oral sex on him. L.B. jumped up and held the intruder while calling his roommates for assistance.
In response to a 9-1-1 call Rutherford Police Officers Buell and Ahern arrived to find the defendant being held down by two men. The defendant told Officer Buell that he and L.B. were homosexuals and were drinking in the house with others that night. He was advised of his Miranda[1] rights and placed under arrest.
At the Rutherford police station defendant gave a statement to Detectives James Bradley and Lynn Morrissey of the Sex Crimes Unit of the Bergen County Prosecutor's Office. He said that he took a bus to New York City that evening and, after consuming a bottle of vodka, went to a gay club. Afterwards he walked around for about an hour and returned to New Jersey. The next thing he remembered he was being held down on the floor by some men while a police officer yelled at him. He said that he had been invited to the house earlier that evening. He claimed he had previously seen L.B. at his home but never spoke with him before that night. When asked if he placed his mouth on *937 L.B.'s penis, defendant said he did not remember but that it could have happened.
In his statement to police L.B. told of a similar incident about a week earlier. On July 28, 1997, he returned home from a bar at about 2:00 a.m. and went to sleep on the floor of his living room because one of his roommates was asleep on the couch. Some time later he awoke because "a person's head was bobbing up out of [his] lap" while he had an orgasm. L.B. said he chased the intruder out of his house and lost sight of him. He returned to the living room and locked his door. Thinking he may have had a bad dream, L.B. went back to sleep. He did not report the matter to the police when he woke up the following morning. L.B. was missing his car keys which had been on the coffee table. He said that after the August 3 incident he found the keys outside by his porch.
When asked about July 28, 1997, the defendant said he entered L.B.'s home at about 3:00 a.m. and performed fellatio upon a man lying on the floor. He gave varying responses as to whether the person was awake or asleep, but he admitted putting the man's penis in his mouth without his consent. He also claimed that he had sexual relations in the same house about a month earlier but did not know with whom because it was dark.
Defendant's defense at trial was consent. He did not testify or present any witnesses. The jury found him not guilty of all charges except for the count of second degree sexual assault on August 3, 1997. A motion for a new trial was denied.
Defendant argues his conviction should be reversed for the following reasons:

POINT I -THE PROSECUTOR'S SUMMATION EXCEEDED THE BOUNDS OF PROPRIETY.

POINT II -THE TRIAL COURT'S CHARGE TO THE JURY WITH RESPECT TO COUNTS III AND VI WAS SUFFICIENTLY AMBIGUOUS AND CONFUSION [SIC] AS TO DENY TO THE DEFENDANT HIS RIGHT TO A FAIR TRIAL, WARRANTING A REVERSAL. (Not Raised Below.)

POINT III- THE JURY'S VERDICT FINDING THE DEFENDANT GUILTY OF COUNT VI WAS INCONSISTENT, ILLOGICAL AND THE RESULT OF COMPROMISE.

POINT IV- THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
During the course of the assistant prosecutor's summation the following comments were made:
Now, let's look back at the defense theory. Consent again.
Now, the Judge instructed you [on] the evidence in this case, where does it come from? From the stand when the witness takes it.
You have heard zero evidence in this case about consent. The only evidence you heard over there was the victim say that there was no consent.
Defendant objected but made no motion for a mistrial. Following a conference at side bar, the judge delivered the following curative instruction:
Ladies and Gentlemen of the jury, I am instructing you to totally disregard anything you might have heard referring to the only evidence you heard over there. Okay. You must totally disregard this statement. Do not consider it. Wipe it from your mind, and certainly you're not to use it during any of your deliberations. Everybody understand that?
The judge reinforced this instruction in his final charge, telling the jury that statements of counsel in openings and summations *938 were not to be considered as evidence. Defendant did not object to either instruction.
We have emphatically stated that a prosecutor should not in either obvious or subtle fashion draw attention to a defendant's decision not to testify. State v. Engel, 249 N.J.Super. 336, 382, 592 A.2d 572 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991). When a prosecutor's comments indicate or imply a failure by the defense to present testimony, the facts and circumstances must be closely scrutinized to determine whether the defendant's Fifth Amendment privilege to remain silent has been violated and his right to a fair trial compromised. State v. Sinclair, 49 N.J. 525, 549, 231 A.2d 565 (1967); Engel, supra, 249 N.J.Super. at 382, 592 A.2d 572.
In this instance the comments of the prosecutor were improper. A jury could infer from them that there was a negative inference from the fact that defendant did not testify, especially in light of the defense of consent. See Sinclair, supra, 49 N.J. at 548-49, 231 A.2d 565; State v. Bowens, 219 N.J.Super. 290, 302, 530 A.2d 338 (App.Div.1987). However, the comments were not so egregious that a prompt and proper instruction would not ameliorate their prejudicial effect. See State v. Scherzer, 301 N.J.Super. 363, 433, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997); Engel, supra, 249 N.J.Super. at 382, 592 A.2d 572; State v. Francis, 341 N.J.Super. 67, 73, 775 A.2d 79 (App.Div.2001). We find that the actions of the trial judge were swift and appropriate and that as a result defendant was not deprived of a fair trial.
The defendant also argues that prejudicial error resulted from the prosecutor's comments in summation on matters not in evidence and the expression of his own personal views and opinions. We have reviewed the record with care. While some of the prosecutor's comments were improper, the trial judge properly sustained defense objections and instructed the jury not to consider the prosecutor's comments. We find no grounds to reverse.
Defendant's remaining contentions are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
The State's argument on appeal is that the sentencing judge abused discretion in imposing a probationary sentence for the second degree sexual assault conviction and further erred in failing to impose probation for life pursuant to Megan's Law, N.J.S.A. 2C:7-1. We agree and remand for resentencing.
Sexual assault pursuant to N.J.S.A. 2C:14-2c(2) is a second degree crime with a range of sentence of from five to ten years and a presumptive term of seven years. N.J.S.A. 2C:43-6(2), 2C:44-1(f)(1)(c). A term of incarceration is presumed and must be imposed unless the sentencing judge in consideration of the character and condition of the defendant opines that imprisonment would be a "serious injustice which overrides the need to deter such conduct by others." N.J.S.A. 2C:44-1(d); see State v. Rivera, 124 N.J. 122, 590 A.2d 238 (1991); State v. Jabbour, 118 N.J. 1, 570 A.2d 391 (1990).
The standard for the requisite finding of "serious injustice" is extremely narrow. State v. Jarbath, 114 N.J. 394, 406-07, 555 A.2d 559 (1989). It is not met simply by a finding that mitigating factors substantially outweigh aggravating factors such that the interest of justice would permit a sentence to a term appropriate to a crime one degree lower. N.J.S.A. 2C:44-1(f)(2); State v. O'Connor, 105 N.J. 399, 522 A.2d 423 (1987); State v. Partusch, 214 N.J.Super. 473, 476-77, 519 A.2d 946 (App. *939 Div.1987). A probationary sentence for a first or second degree offense is rarely warranted and only in "truly extraordinary and unanticipated circumstances." State v. Roth, 95 N.J. 334, 358, 471 A.2d 370 (1984).
In Jarbath, supra, the "serious injustice" exception was applied to a twenty year old woman defendant convicted of killing her nineteen day old son. The defendant had been diagnosed psychotic, was mentally retarded, had attempted suicide and was abused in prison. Finding these circumstances extraordinary, the Supreme Court affirmed a non-custodial sentence because the defendant lacked the "understanding or emotional strength of relatively normal persons," and "could not endure life in prison without unusual suffering, that is hardship and privation greatly exceeding that which would be accepted and endured by ordinary inmates as the inevitable consequences of punishment." Id. at 409, 555 A.2d 559. See also State v. E.R., 273 N.J.Super. 262, 641 A.2d 1072 (App. Div.1994) (holding that the "serious injustice" exception applied because the defendant was dying from the AIDS virus).
Application of the exception has been declined in less extreme cases. See State v. Soricelli, 156 N.J. 525, 535-38, 722 A.2d 95 (1999) (presumption not overcome where offender convicted of second degree possession of PCP had undergone drug treatment, bought a new business, paid child support and attended regular visitation with his daughter); State v. Rivera, 124 N.J. 122, 126-27, 590 A.2d 238 (1991) (reversing imposition of suspended sentence for second degree robbery based on defendant's drug addiction); State v. Johnson, 118 N.J. 10, 19, 570 A.2d 395 (1990) (presumption of incarceration for first degree aggravated sexual assault not overcome where deaf and drug-addicted defendant was his family's primary wage earner); Jabbour, supra, 118 N.J. at 8-9, 570 A.2d 391 (presumption not overcome for defendant with weak physical and psychiatric condition); and State v. Kelly, 97 N.J. 178, 219-20, 478 A.2d 364 (1984) (presumption not overcome by fact that defendant was abused by her husband and her children's need to have their mother at home).
The sentencing judge noted three applicable aggravating factors: (1) the risk that defendant would commit another offense, N.J.S.A. 2C:44-1a(3), although the judge found this risk "very slight;" (2) the need to deter defendant and others from violating the law, N.J.S.A. 2C:44-1a(9), to which the judge expressed "grave doubt" as to the risk of repetitive conduct by defendant; and (3) the defendant's prior criminal record, N.J.S.A. 2C:44-1a(6). He found the following mitigating factors: (1) defendant did not contemplate that his conduct would cause or threaten serious harm, N.J.S.A. 2C:44-1b(2); (2) defendant's conduct resulted from circumstances unlikely to recur, N.J.S.A. 2C:44-1b(8); (3) defendant's character indicated that he was unlikely to commit another offense, N.J.S.A. 2C:44-1b(9); (4) defendant would respond well to probation, N.J.S.A. 2C:44-1b(10); and (5) that incarceration would be a serious hardship upon the defendant, N.J.S.A. 2C:44-1b(11).
The sentencing judge found that the mitigating factors substantially and overwhelmingly outweighed the aggravating factors. He then made the additional finding that imprisonment of the defendant would constitute a serious injustice.
And in this case I believe a serious injustice would be done because I don't find that this defendant committed an act of sexual assault upon the victim. I believe the victim was a willing participant in this event. I believe what the victim said in his statements [made after *940 conviction] that he knew the victim. He didn't pick the house, just walk down the street, there's a house. Let's go up to it 3 o'clock in the morning. Oh, the door's unlocked. Isn't that interesting. The door's unlocked. I'll walk in, and then two weeks later he goes back to the same place.
Now there's other men in the house and they were just allegedly trespassed upon in this house two weeks earlier and the door is still unlocked and he walks in again.
We'd have to be deaf, dumb and blind and accept as the truth that this was totally involuntary ...
The court is considering the character and condition of the defendant and clearly rejects the presumption of imprisonment.
Defendant will be sentenced as a third degree offender to three years probation.
We make no determination as to the selection of statutory aggravating and mitigating factors by the trial judge or as to this conclusion that the mitigating factors substantially outweighed the aggravating factors. However, we hold that the sentencing judge committed reversible error by applying the serious injustice exception so as to impose a probationary term. The rationale for this result was clearly grounded on the judge's view that the sexual encounter in issue was consensual, which conflicts with the jury's decision. Disagreement with a jury verdict cannot justify a probationary sentence for a second degree crime under the serious injustice exception to the statutory presumption of incarceration.
Furthermore, the sentencing judge erred in failing to order community supervision of defendant. N.J.S.A. 2C:43-6.4 mandates that persons convicted of sexual assault receive a special sentence of lifelong community supervision.
Affirmed in part. Reversed in part.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).