**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2269-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

KALEL E. BALDWIN,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Submitted October 8, 2024 – Decided November 13, 2024

      Before Judges Firko and Bishop-Thompson.

      On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 21-11-0774.

      Jennifer N. Sellitti, Public Defender, attorney for appellant/cross-respondent (Laura B. Lasota, Deputy Public Defender II, of counsel and on the briefs).

      William A. Daniel, Union County Prosecutor, attorney for respondent/cross-appellant (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kalel E. Baldwin appeals from the August 10, 2022 Law Division order denying his motion for admission into the pre-trial intervention (PTI) program following his rejection by the Union County Prosecutor's Office (Prosecutor's Office). The State cross-appeals from the March 24, 2023 order sentencing defendant to probation for a first-degree conviction for distribution of a controlled dangerous substance (CDS). We affirm.

I.

During an undercover drug investigation on October 19, 2020, a Union undercover police officer completed a drug transaction for the purchase of fifty ecstasy pills with co-defendant Timothy Hanlein-Hubble.[1] After the completion of a drug transaction, the officers observed Hanlein-Hubble drive to a nearby location and approach a car driven by defendant. The officers later determined defendant's identity based on the numerous motor vehicle summonses issued to him as the driver, although the car was registered to another person.

Two days later, Hanlein-Hubble and the undercover officer arranged for the purchase of 500 ecstasy pills in Clark. While surveilling a pre-arranged meeting area, officers observed defendant in the same car and a female

---

[1] Hanlien-Hubble pleaded guilty to one count of first-degree possession of a controlled dangerous substance with intent to distribute under Union County Accusation No. 21-09-0406.

passenger arrive at the location. Hanlein-Hubble walked over to defendant's car and leaned into the open passenger door. After Hanlein-Hubble walked away from defendant's car, the officer received a phone call. Twenty minutes later, Hanlein-Hubble and the officer met and completed the drug transaction. Hanlein-Hubble was subsequently arrested. Around the same time, defendant's car was stopped; and marijuana and methamphetamine were found in the female passenger's purse on the passenger floorboard, and two jars of marijuana and a digital scale were found in the trunk.[2]

Defendant waived his Miranda[3] rights and provided an initial statement to the police. Defendant admitted he delivered the ecstasy pills to a person named "Tim" in Clark. He also admitted that he approached "Tim's" job, "Tim" approached the passenger side of defendant's car and defendant gave him a plastic bag of ecstasy pills. Defendant also provided a description of the pills during the police interview.

Defendant again waived his Miranda rights and provided a second statement. Defendant admitted his part in the drug transaction and said he

---

[2]  While not specified in the record, the charges against the female passenger for the CDS found in her purse were dismissed.

[3]  Miranda v. Arizona, 384 U.S. 436 (1966).

bought the pills from a person named "G" in Newark. Defendant stated that he planned to keep most of the profits from the sale of the pills and give some of the profit to Hanlein-Hubble. Thereafter, in November 2021, defendant was indicted on charges of first-degree distribution of methamphetamine, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(8), and third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1).

In March 2022, defendant applied to Union County's PTI program. In his PTI application, defendant acknowledged that he was charged with a crime that carried a presumption of imprisonment. In support of his application, defendant submitted a statement of compelling circumstances, stating that he had (1) no prior criminal conviction or arrests, (2) full-time employment, and (3) received and continued to receive psychiatric care and was hospitalized as a teenager and adult.

Defendant also stated that he would "struggle with the incarceration period due to [his] fragile mental state." Defendant also submitted a personal statement, letters from his psychotherapist, Dr. Engin Bahce, and mental health treatment records. Lastly, defendant admitted regret for his participation in the distribution and possession of the pills.

4

Bahce's letters provided an overview of the history of defendant's mental health illness. Defendant was treated from September 2009 to June 2010, December 2014 to June 2018, and June 3, 2020 to July 8, 2020. He began counseling with Bahce when he was ten years old. At the age of twelve, defendant spent nineteen months in a residential setting after multiple psychiatric admissions. At the age of fifteen, defendant was diagnosed with bipolar disorder — characterized by extreme mood swings including emotional highs (mania or hypomania) and lows (depression).[4] Defendant received inpatient treatment at various times and was placed on several psychotropic medications.

Due to behavioral issues, defendant was placed in an alternative educational setting from fifth grade through high school. He graduated high school in 2018 and was discharged from counseling services because he no longer met the criteria for further services. Bahce opined defendant's emotional

---

[4] Bipolar disorder is one of seven categories of depressive disorders under the Diagnostic and Statistical Manual of Mental Disorders. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (5th ed. text rev. DSM-5-TR 2022) and (5th ed. DSM-5 2013), Section II Bipolar and Related Disorders (enumerating diagnostic criteria for bipolar disorders and other characteristics).

A-2269-22

immaturity presented significantly younger than his physiological age and physical stature as an adult.

Defendant was hospitalized on numerous occasions — most recently from May 20, 2020 to June 20, 2020 — after a suicide attempt. Defendant then resumed counseling with Bahce and taking psychotropic medication but stopped treatment after four sessions.

Defendant resumed treatment in November 2021 after his arrest but was no longer on psychotropic medication. Bahce opined defendant's mental health had "deteriorated considerably" and, as a result, defendant "exhibited poor judg[]ment and limited insight." Thus, in Bahce's clinical opinion, defendant "could benefit from a more intensive and structured mental health treatment program" and that prison should "be averted as that would be the worst environment for him."

The Prosecutor's Office reviewed and rejected defendant's PTI application. In rejecting defendant's application, the prosecutor analyzed each of the N.J.S.A. 2C:43-12(e) factors, finding the factors weighed against admittance into the program. The prosecutor specifically found defendant engaged in organized criminal activity and a continuing criminal enterprise.

A-2269-22

In addressing defendant's "struggling" mental health, the prosecutor considered defendant's explanation for not taking medication due to the "poor side effects" but noted defendant had not been on medication for the past year and was not then-currently seeking or undergoing mental health treatment. Moreover, defendant did not provide information on how his mental health would be addressed, or the type of treatment required in the context of the short-term rehabilitative goals of PTI and defendant's "long struggle" with mental health.

On June 3, 2022, defendant appealed from the denial of his application and moved to compel entry into PTI. In an oral opinion issued on August 10, 2022, the trial court denied the defendant's petition, finding the State appropriately considered the statutory factors, and therefore, there was no patent and gross abuse of discretion by the State in rejecting defendant's application. The court rejected the State's theory that defendant was a "mastermind" or "involved in organized crime," but found defendant was involved in a "significant drug-related transaction." The court also noted both defendant and the State recognized his mental health issues but multiple attempts to assist defendant were fruitless. The court further noted "there was nothing that [PTI] could do or change" defendant's noncompliance with treatment.

Pursuant to a negotiated plea agreement, defendant pleaded guilty to first-degree distribution of CDS, in exchange for a recommended sentence of a "flat" five-year prison term as if defendant was convicted of a second-degree crime and the dismissal of the remaining charge.

On March 24, 2023, the sentencing court imposed a downgraded five years' probation subject to a reverse sentence of 364 days in county jail to be served following the probationary period, rather than the State's recommended five-year prison term.

The court then analyzed the statutory aggravating and mitigating factors. The court found aggravating factors three (risk of reoffending), and nine (need for deterrence) applied. N.J.S.A. 2C:44-1(a)(3); (9). The court also found mitigating factors one (the nature and circumstances of the offense); seven (prior criminal history); ten (likely to respond affirmatively to probationary treatment); thirteen (conduct of youthful defendant substantially influenced by another person more mature than defendant); and fourteen (under twenty-six years of age at the time of the commission of the crime). N.J.S.A. 2C:44-1(a)(1); (7); (10); (13); (14). The court determined the mitigating factors substantially outweighed aggravating factors three and nine.

A-2269-22

In sentencing defendant, the court used the "serious injustice" standard of N.J.S.A. 2C:44-1(d), which addresses the presumption of incarceration for first- and second-degree offenses. In doing so, the court explained that "imprisonment would have an excessive hardship" on defendant's mental health and an imprisonment sentence would be "a serious injustice" that overrides the need to deter others.

In addressing the specific circumstances of the case, the court recounted defendant's "extraordinary" mental health history and "well-documented set of circumstances":

> In this particular instance, we have a [twenty-three]-year-old young man, who was [twenty] years old at the time of the offense. Only mere months before he had attempted suicide and was hospitalized. I want to go through why I think this falls outside of the ["h]eartland" of] case[s] or outside of the run-of-the-mill case. This, this young man has been on one, two, three, four, five, six, seven different medications from 2010 through 2020: Zoloft, Abilify, . . . Depakote, Risperdal, Lithium, Seroquel, Trileptal. And when I reviewed the medical records that were provided and the summary that were provided, they have had a number of different impacts on this young man, effects on him: [w]eight gain, depressed, further depressive disorders, suicidal ideations. And, . . . the father had mentioned, it [was] a trial-and-error situation. They tr[ied] these different cocktails[,] and they ha[d] varying degrees of effects on individuals.

 A-2269-22

> When I reviewed the, the reports here, he was diagnosed as early as fifth grade with bipolar order, mood dysregulation disorder, oppositional defiant disorder, generalized bipolar disorder, . . . depressive disorder. He's had several hospitalizations. According to the medical professionals, he's functioning well below average in intellectual cognitive acts. He has a history of cutting, suicide attempts, hospitalizations, auditory and visual hallucinations.
>
> This is not just a run-of-the-mill situation. He has really struggled. And for a person who has struggled with all these different issues and not to have criminal — contact with criminal justice system until now I, I think it speaks volumes about what we're dealing with here and why this is outside of the realm of, of the average and run-of-the-mill case and why this shouldn't be treated as the co-defendant's case.

The court further reasoned the impact of imprisonment on defendant's mental health

> He was — he, he suffered from bullying, which is another part of the concern that this [c]ourt has in sending him to, sentencing him to a term of imprisonment that when he gets there, that he is going to decompensate in a way that could lead to a successful suicide attempt. That is something that the psychotherapist indicated was their concern if he was sent to, to jail or to prison. And this [c]ourt does not take that lightly, particularly in light of the history of the attempts previously and his reaction to bullies.

The court found defendant did not have the "mental fortitude to deal" with "survival 24/7" because

A-2269-22

There was documentation of abuse in the facilities that were supposed to help defendant — the bruising and the scars and the inappropriate sexual comments and conduct by staff that were left either unattended or almost a slap on the wrist.

In considering the human cost of punishing defendant. The court reasoned:

This [c]ourt simply feels like the record is very clear here that a person with this level of, of mental health challenges and cognitive disability would not survive in a prison setting without some serious decompensation and a real risk of, of potential human loss.

The court recommended defendant's placement in the mental health unit of probation and the remaining charges were dismissed. Defendant's sentence was automatically stayed pursuant to N.J.S.A. 2C:44-1(f)(2). The appeal and cross-appeal followed.

## II.

Defendant appeals the denial of entry into PTI, arguing:

POINT I. THE PROSECUTOR'S REJECTION OF DEFENDANT'S ADMISSION INTO [PTI] WAS AN ARBITRARY, PATENT, AND GROSS ABUSE OF DISCRETION WHICH MUST BE CORRECTED BY THIS COURT.

A. The Prosecutor Erred in Characterizing the Crimes as Part of Organized Criminal Activity or a Continuing Criminal Enterprise and Applying the

11

Presumption Against Admission under Rule 3:28-4(b)(1).

B.     The Prosecutor's Decision was not Based on an Individualized Assessment of [Defendant's] Amenability to Rehabilitation, Including His Documented Mental Health History and Post-Arrest Rehabilitative Efforts, and Relied Substantially on the Erroneous Belief that PTI Could Not Provide Adequate Supervision.

In its cross-appeal, the State argues:

POINT I.    THE COURT PROPERLY DENIED DEFENDANT'S MOTION TO COMPEL THE STATE TO ADMIT HIM INTO PTI BECAUSE THE STATE'S REJECTION WAS NOT A PATENT AND GROSS ABUSE OF DISCRETION.

POINT II.    THE SENTENCING COURT'S IMPOSITION OF PROBATION FOR A FIRST-DEGREE CRIME WAS UNLAWFUL.

In response to the State's cross-appeal, defendant argues:

BECAUSE THE SENTENCING COURT DID NOT ABUSE ITS DISCRETION IN IMPOSING A TERM OF PROBATION FOR DEFENDANT'S CONVICTION FOR FIRST-DEGREE DRUG DISTRIBUTION, THE SENTENCE SHOULD BE AFFIRMED.

We first address defendant's appeal.  Our review of a PTI rejection "is severely limited," and "serves to check only the 'most egregious examples of injustice and unfairness.'"  State v. Negran, 178 N.J. 73, 82 (2003) (quoting State

v. Leonardis, 73 N.J. 360, 384 (1977)); see also State v. Denman, 449 N.J. Super. 369, 376 (App. Div. 2017).  We apply the same standard of review as the trial court and review its decision de novo. State v. Waters, 439 N.J. Super. 215, 226 (App. Div. 2015).

"'PTI is essentially an extension of the charging decision, . . . the decision to grant or deny PTI is a "quintessentially prosecutorial function."'" State v. Johnson, 238 N.J. 119, 128 (2019) (quoting State v. Roseman, 221 N.J. 611, 624 (2015)).  "'As a result, the prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference.'" Ibid. (quoting Roseman, 221 N.J. at 624).  Thus, "[a] court reviewing a prosecutor's decision to deny PTI may overturn that decision only if the defendant 'clearly and convincingly' establishes the decision was a 'patent and gross abuse of discretion.'" Id. at 128-29 (quoting State v. Wallace, 146 N.J. 576, 583 (1996)).

A PTI application that requires prosecutor consent pursuant to Rule 3:28-1(d)(1) must "include a statement of the extraordinary and compelling circumstances that justify consideration of the application notwithstanding the presumption of ineligibility based on the nature of the crime charged and any prior convictions." R. 3:28-3(b)(1).  In establishing compelling reasons for admission into PTI, "there must be a showing greater than that the accused is a

first-time offender and has admitted or accepted responsibility for the crime." State v. Nwobu, 139 N.J. 236, 252 (1995).

To establish an abuse of discretion, a defendant must show the prosecutor's denial of his or her PTI application "'(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" Roseman, 221 N.J. at 625 (quoting State v. Bender, 80 N.J. 84, 93 (1979)). An abuse of discretion rises to the level of patent and gross when the defendant shows the prosecutor's denial "'clearly subvert[s] the goals underlying [PTI].'" Ibid. (quoting Bender, 80 N.J. at 93).

Defendant argues the State abused its discretion in denying his PTI application because he was an "ideal" candidate, and the State improperly characterized his participation in the drug transaction as part of organized criminal activity or part of a continuing criminal enterprise. Defendant also argued the State did not fully assess or document his mental health history and his amenability to rehabilitation. Defendant's arguments are not supported by the motion record.

We are satisfied the court appropriately considered the merits of defendant's PTI application. Based on our review of the record, the prosecutor

considered defendant's submissions and reasons articulated for entry into PTI. The prosecutor's denial of defendant's PTI application was based on an appropriate review of each factor. While defendant and the prosecutor may disagree regarding the proper weight of the factors, such disagreement is not a basis for reversing the prosecutor's decision. Moreover, both the prosecutor and the trial court considered defendant's documented mental history, and noted defendant was not in treatment at the time he applied for PTI, and his noncompliance did not establish compelling circumstances to justify PTI. We therefore conclude there was no gross abuse of discretion.

We agree with the court that defendant has not provided compelling evidence demonstrating his amenability to the rehabilitative process or that the prosecutor's decision was arbitrary or unreasonable. Given our deferential review of prosecutorial decisions concerning admission into PTI programs, we see no reason to disturb the court's denial of defendant's admission into the PTI program.

## II.

In its cross-appeal, the State contends the court improperly sentenced defendant because this matter does not present the "demanding and

A-2269-22

extraordinary circumstances" to overcome the presumption of imprisonment. We disagree.

Our review of the sentence imposed by the trial court is limited. State v. Miller, 205 N.J. 109, 127 (2011). A trial court's sentence is reviewed on an abuse of discretion standard. State v. Torres, 246 N.J. 246, 272 (2021). Pursuant to that deferential standard, we "must not substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Thus, we will affirm the sentence "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shocks the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). "However, 'the deferential standard of review applies only if the trial judge follows the Code and the basic precepts that channel sentencing discretion.'" State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting State v. Case, 220 N.J. 49, 65 (2014)).

It is long settled that a sentencing court must consider and apply aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b). Case, 220 N.J. at 64. "'Proper sentencing thus requires an explicit and full

statement of aggravating and mitigating factors and how they are weighed and balanced.'" State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)); see Case, 220 N.J. at 66. We, therefore, defer to the sentencing court's assessment of those factors if supported by "competent, credible evidence in the record." State v. Yarbough, 195 N.J. Super. 135, 140 (App. Div. 1984).

Having reviewed the sentencing court's reasons in support of findings as to the aggravating and mitigating factors, we discern no abuse of discretion in the court's decision. The court scrupulously engaged in the required inquiry in stating its findings as to the aggravating and mitigating factors. We are satisfied the court's findings on the aggravating and mitigating factors were properly based on the evidence in the record and did not constitute an abuse of discretion.

We also reject the State's argument that the judge abused his discretion by waiving the presumption of imprisonment under N.J.S.A. 2C:44-1(d) and imposing a probationary term and reverse sentence.

The "serious injustice" standard found in N.J.S.A. 2C:44-1(d) permits the court to waive the presumption of imprisonment for a first- or second-degree offender when "having regard to the character and condition of the defendant, it is of the opinion that [his] imprisonment would be a serious injustice which

overrides the need to deter such conduct by others." In <u>State v. Evers</u>, the Court

gave "trial courts guideposts for determining the extraordinary or extremely

unusual case where the human cost of imprisoning a defendant for the sake of

deterrence constitutes a serious injustice." 175 N.J. 355 (2003). The Court held

that

> In deciding whether the "character and condition" of a defendant meets the "serious injustice" standard, a trial court should determine whether there is clear and convincing evidence that there are relevant mitigating factors present to an extraordinary degree and, if so, whether cumulatively, they so greatly exceed any aggravating factors that imprisonment would constitute a serious injustice overriding the need for deterrence. We do not suggest that every mitigating factor will bear the same relevance and weight in assessing the character and condition of the defendant; it is the quality of the factor or factors and their uniqueness in the particular setting that matters.
>
> [<u>Id.</u> at 393-94.]

"[T]he standard governing the downgrading of a defendant's sentence . . . is

high." <u>State v. Megargel</u>, 143 N.J. 484, 500 (1996). Thus, a defendant

attempting to overcome the presumption of imprisonment bears a "heavy

burden." <u>Evers</u>, 175 N.J. at 392. The standard for establishing a serious

injustice "is extremely narrow." <u>State v. Cooke</u>, 345 N.J. Super. 480, 487 (App.

Div. 2001). "A probationary sentence for a first[-] or second[-]degree offense

is rarely warranted and only in 'truly extraordinary and unanticipated circumstances.'" Ibid. (quoting Roth, 95 N.J. at 358).

The presumption may be overcome only in those truly extraordinary and idiosyncratic cases where the human suffering resulting from imprisoning "a particular defendant to deter others from committing" the same offense "would be 'too great.'" Evers, 175 N.J. at 389 (quoting State v. Rivera, 124 N.J. 122, 125 (1991)). In the singular case of State v. Jarbath, 114 N.J. 394 (1989), our Court found the presumption of imprisonment was overcome where defendant was a psychotic, mentally disabled woman who accidentally killed her baby and, while in prison, suffered abuse almost daily and attempted to commit suicide. The Court reasoned that imprisoning an emotionally impaired defendant who could not sufficiently comprehend the "wrongfulness of her conduct" did not further the goal of general deterrence. Id. at 405-06. The combination of her mental condition and her level of culpability led the Court to conclude imprisonment of defendant was a serious injustice that outweighed the needs of general deterrence. Ibid.

Governed by these standards, we discern no basis to reverse the sentencing court's imposition of a reverse sentence. The record reflects the sentencing court analyzed the State's recommendation because of defendant's "extraordinary"

mental health and cognitive challenges given the "well-documented" history of "cutting, suicide attempts, hospitalizations, auditory and visual hallucinations," and "abuse" at facilities. The court further found defendant "could not clearly appreciate the magnitude" of his offense. Lastly, the court determined the "human cost [was] simply too great" for a first-time offense and defendant "with that level of mental health challenges and cognitive disabilities would not survive in a prison setting without some serious decompensation and a real risk of potential human loss."

We are satisfied there is sufficient credible evidence in the record to overcome the presumption of imprisonment. Thus, we hold the sentencing court did not abuse its discretion by sentencing defendant to probation by imposing a sentence outside of the sentencing guidelines based on the extraordinary circumstances presented in this matter.

Affirm.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

20                                                                    A-2269-22