# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1775-22

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

GARRETT D. FLYNN,

     Defendant-Respondent.

_____

> Submitted May 20, 2025 – Decided June 25, 2025
>
> Before Judges Gooden Brown and Chase.
>
> On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 22-09-0778.
>
> Matthew J. Platkin, Attorney General, attorney for appellant (Leslie-Ann M. Justus, Deputy Attorney General, of counsel and on the briefs).
>
> Wilhelm & Roemersma, PC, attorneys for respondent (Scott M. Wilhelm, on the brief).

PER CURIAM

Defendant Garrett D. Flynn entered a negotiated guilty plea to second-degree endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4(b)(5)(b)(ii). Because defendant pled guilty to a second-degree offense, the presumption of imprisonment applied pursuant to N.J.S.A. 2C:24-4(b)(5)(b) and N.J.S.A. 2C:44-1(d). In exchange for the guilty plea, as permitted under N.J.S.A. 2C:44-1(f)(2), the State recommended that defendant be sentenced in the third-degree range to three years' imprisonment. However, without applying the standard embodied in N.J.S.A. 2C:44-1(d) and N.J.S.A. 2C:24-4(b)(5)(b) to overcome the presumption of imprisonment, the sentencing judge imposed a three-year suspended sentence which is tantamount to a non-custodial disposition. The State now appeals pursuant to N.J.S.A. 2C:44-1(f)(2), arguing that because the judge failed to engage in the requisite analysis and make the necessary findings, the judge imposed an illegal sentence. We agree that the judge failed to properly apply the sentencing guidelines. Accordingly, we vacate the sentence and remand for resentencing.

I.

We glean these facts from the record. Following an investigation stemming from a tip by the National Center for Missing and Exploited Children, a search warrant executed at defendant's home uncovered eleven video files of

child sexual abuse/exploitation material (CSAEM) on defendant's passcode-protected phone. In a Mirandized[1] statement, defendant admitted possessing the eleven files. The investigation also tied defendant to a Mega link containing 328 videos of CSAEM.[2]

As a result, defendant was charged in a one-count indictment with second-degree endangering the welfare of a child by possessing 1,000 or more items of CSAEM, contrary to N.J.S.A. 2C:24-4(b)(5)(b)(ii).[3] Pursuant to a plea agreement, on November 14, 2022, defendant pled guilty in exchange for the State's recommendation that he be sentenced in the third-degree range to three years' imprisonment, along with parole supervision for life (PSL), N.J.S.A. 2C:43-6.4, and Megan's Law-related requirements, N.J.S.A. 2C:7-1 to -23.

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

[2] Mega is a cloud-based file hosting service. A link on Mega "allows users to upload and share files, as well as create chatrooms in which they can exchange messages and files." United States v. Rohani, 717 F. Supp. 3d 981, 985 (D. Or. 2023). "Content stored on Mega, as well as the chatrooms, are encrypted, meaning they cannot be accessed without a password or a decryption code." Ibid. "Due to its end-to-end encryption, Mega 'has become a popular cloud-based storage repository and/or location to distribute child pornography.'" Ibid.

[3] Under N.J.S.A. 2C:24-4(b)(7), "each depiction" of CSAEM "that is in the form of a film, video, video-clip, movie, or visual depiction of a similar nature shall be considered to be 10 separate items." Therefore, the 328 video files in the Mega link and the eleven videos on defendant's phone amount to approximately 3,390 CSAEM images.

At the plea hearing, defendant confirmed for the judge that he had reviewed and signed the plea forms memorializing the agreement; understood the charge to which he was pleading guilty, the maximum sentence for that charge, and the terms of the plea agreement; was not promised anything other than the State's recommendation in return for his plea; and was pleading guilty of his own free will. In providing a factual basis for the plea, defendant admitted that "between October 15, 2019, and . . . June 23[], 2021," he had "knowingly possess[ed]" or "ha[d] under [his] control . . . more than 1,000 items depicting the sexual exploitation or abuse of a child." The judge accepted defendant's plea, finding that the requirements of Rule 3:9-2 had been satisfied.

Prior to sentencing, on December 16, 2022, defendant underwent a psychosexual evaluation conducted by Zachary Yeoman, Psy.D., and submitted Dr. Yeoman's report for the court's consideration. In performing the evaluation, among other things, Yeoman reviewed intake and therapy progress notes from the therapist defendant had seen in 2019 as well as an October 2022 letter from a different therapist.

In the report, Yeoman noted defendant's history of depression, self-injury, suicidal ideation, and hospitalization, as well as past diagnoses of bipolar disorder and generalized anxiety disorder. Yeoman also reported defendant's

4

"significant progress" with biweekly psychotherapy.[4]  After scoring defendant on several psychological and risk-assessment instruments, Yeoman opined that defendant "pose[d] a low risk of engaging in future [child sexual exploitation] offenses and a very low risk for contact offending, assuming he complies with an adequate management and treatment plan."  Yeoman also described defendant's "sexual offending behavior" as "repetitive but not compulsive."

Defendant appeared for sentencing on February 8, 2023.  After recounting the factual and procedural history of the case, the judge found aggravating factors three and nine based on the risk of re-offense and the need for general and specific deterrence, respectively.  See N.J.S.A. 2C:44-1(a)(3), (9).  In support, the judge cited the "vast number of materials . . . found on [defendant's] [phone] and in the [M]ega link" and noted that there were "little or no protections on the internet that would . . . stop" defendant from viewing these materials other than "self-control," which defendant had not "displayed."  The judge stated further that possession of child sexual exploitation materials involve "heinous crimes that are committed on our most vulnerable citizens, children."

---

[4]  During his pre-sentence investigation interview, defendant also self-reported that "he ha[d] no feelings of depression or anxiety at present."

The judge found mitigating factors seven and fourteen based on defendant having no prior criminal history and being under the age of twenty-six at the time of the offense, respectively. See N.J.S.A. 2C:44-1(b)(7), (14). The judge rejected defendant's arguments that mitigating factors one, two, eight, nine, ten, eleven, and twelve applied. See N.J.S.A. 2C:44-1(b)(1) to (2), (8) to (12).[5]

In rejecting mitigating factors one and two, the judge referred to the serious harm caused by the "market" created by people like defendant who "want[] to view that type of material." Regarding mitigating factors eight and nine, the judge reasoned:

> [Factor eight], the defendant's conduct was a result of circumstances unlikely to recur. First of all, I think the number of images and . . . videos would suggest otherwise. And there[ are], again, little or no protections that can be put in place that would prevent the same type of behavior. There's . . . access to the [i]nternet everywhere, and . . . there's clearly ways to get to those types of sites, even sometimes when you don't want to.

---

[5] N.J.S.A. 2C:44-1(b)(1) (defendant's conduct neither caused nor threatened serious harm); N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate that his conduct would cause or threaten serious harm); N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of circumstances unlikely to recur); N.J.S.A. 2C:44-1(b)(9) (the character and attitude of defendant indicate that he is unlikely to commit another offense); N.J.S.A. 2C:44-1(b)(10) (defendant would respond well to probation); N.J.S.A. 2C:44-1(b)(11) (imprisonment would entail excessive hardship for defendant or his dependents); and N.J.S.A. 2C:44-1(b)(12) (willingness of defendant to cooperate with law enforcement).

> [Factor nine, the] attitude of defendant indicating
> that he's unlikely to commit another offense. . . . I did
> read the report that was produced and [Yeoman did] not
> find him to be . . . compulsive . . . and also indicated
> that there was a low risk . . . of re[-]offense. But, again,
> . . . with the temptation being out there [and the]
> ab[ility] to access that material[,] I don't find [that
> factor nine] applies either.

The judge found mitigating factors ten, eleven, and twelve, respectively, did not apply because a probationary sentence was not "contemplated," defendant's imprisonment would not entail an excessive hardship, and defendant's cooperation with law enforcement was not noteworthy.

After concluding that the applicable aggravating and mitigating factors were "in equipoise," the judge sentenced defendant to a term of three years' imprisonment, finding it "to be reasonable given all of the circumstances." The judge also imposed a special sentence of PSL and ordered defendant to comply with the requirements of Megan's Law. However, the judge suspended the custodial portion of defendant's sentence, explaining:

> The reason for the suspension of the sentence is that I
> believe that the aggravating and mitigating factors are
> in equipoise[.] [G]iven . . . the young age of . . .
> defendant . . . , the fact that he's working in the
> community[,] . . . has not committed new offenses since
> he's been on pre-trial release, . . . and the fact that the
> sexual evaluation . . . indicated that he was [at] a low
> risk to reoffend, I think the imposition of a suspended
> sentence is the appropriate remedy in this case. And I

7

do understand fully the State's argument that [t]he . . . number of images and videos were in the second[-]degree range. There's no indication [that he] ha[s] any [pro]clivity [to] . . . act out with a live individual. It is all from the [i]nternet.

Defendant was also ordered to follow the treatment recommendations contained in Yeoman's evaluation, have no unsupervised contact with minors, and forfeit his interest in the electronic devices that were seized. The judge entered a conforming judgment of conviction on February 13, 2023, and this appeal followed.[6]

On appeal, the State raises the following single point for our consideration:

> THE TRIAL JUDGE'S IMPOSITION OF A THREE-YEAR SUSPENDED SENTENCE FOR DEFENDANT'S SECOND-DEGREE POSSESSION OF MORE THAN 1,000 CSAEM IMAGES CONVICTION WAS AN ILLEGAL NON-CUSTODIAL SENTENCE THAT MUST BE REVERSED.
>
> > A. As a Second-Degree Convicted Possessor of 100 or More CSAEM Images, the Presumption of Imprisonment Remained Applicable to Defendant.
> >
> > B. Absent a Finding that Defendant's

---

[6] The case was transferred from a Sentencing Oral Argument (SOA) calendar, see R. 2:9-11, to a plenary calendar.

Imprisonment Would Be a "Serious Injustice,"
[N.J.S.A.] [2C:]24-4(b)(5)(b) and [2C:]44-1(d)
Required Defendant's Imprisonment.

II.

Our standard of review for sentencing decisions is governed by well-settled principles. We review "whether the sentence imposed violates sentencing guidelines and legislative policies" de novo, State v. Robinson, 217 N.J. 594, 603-04 (2014), and "modify sentences only when the trial court's determination was 'clearly mistaken.'" State v. Jabbour, 118 N.J. 1, 6 (1990) (internal quotation marks omitted) (quoting State v. Jarbath, 114 N.J. 394, 401 (1989)). "If a trial court follows the sentencing guidelines, an appellate court ought not second-guess the sentencing court's decision." Id. at 5.

When sentencing, the trial court must first decide "whether incarceration is warranted, taking into account the presumption for and against imprisonment." Ibid.; see N.J.S.A. 2C:44-1(d) to (e). A presumption of imprisonment applies to a person convicted of a first- or second-degree offense unless the presumption is overcome. See N.J.S.A. 2C:44-1(d).

"[F]or crimes of the first and second degree, the court may sentence the defendant for an offense one degree lower than the crime for which he or she was convicted if it is 'clearly convinced' that the mitigating factors 'substantially

outweigh' the aggravating factors." Jabbour, 118 N.J. at 5 (quoting N.J.S.A. 2C:44-1(f)(2)). "The downgrading of an offense is not a prerequisite to finding that the presumption of imprisonment for a first- or second-degree conviction has been overcome," and "[t]he standard for overcoming the presumption of imprisonment is distinct from that for downgrading an offense." State v. Evers, 175 N.J. 355, 389 (2003). "Moreover, the reasons offered to dispel the presumption of imprisonment must be even more compelling than those that might warrant downgrading an offense." Ibid.

The State asserts that the sentence imposed is illegal. Whether a defendant's sentence is illegal is an issue of law subject to de novo review. State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016). "There are two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law." State v. Hyland, 238 N.J. 135, 145 (2019) (citing State v. Schubert, 212 N.J. 295, 308 (2012)). "Those two categories of illegal sentences have been 'defined narrowly.'" Ibid. (quoting State v. Murray, 162 N.J. 240, 246 (2000)). "A sentence 'not imposed in accordance with law' includes 'a disposition [not] authorized by the Code.'" Drake, 444 N.J. Super. at 271 (alteration in original) (quoting Murray, 162 N.J. at 247).

Although "[a] presumption of imprisonment applies to a person convicted of [a] first- or second-degree crime[]," State v. Natale, 184 N.J. 458, 483 n.10 (2005), the Code authorizes a non-custodial sentence on a second-degree crime and allows the presumption of imprisonment to be overcome in certain exceptional circumstances. See State v. Rivera, 124 N.J. 122, 126 (1991). In such circumstances, the presumption of imprisonment applies "unless, having regard to the character and condition of the defendant, [the court] is of the opinion that the defendant's imprisonment would be a serious injustice which overrides the need to deter such conduct by others." N.J.S.A. 2C:44-1(d). Stated differently, the statute requires courts to incarcerate first- and second-degree offenders except "where it would be entirely inappropriate to do so." Rivera, 124 N.J. at 125 (quoting State v. Roth, 95 N.J. 334, 358 (1984)).

In addition to the general presumption of imprisonment applicable to second-degree offenses under N.J.S.A. 2C:44-1(d), N.J.S.A. 2C:24-4(b)(5)(b) specifically states that, barring certain convictions for third-degree offenses,

> in any instance where a person was convicted of an offense under this subparagraph that involved 100 or more items depicting the sexual exploitation or abuse of a child, the court shall impose a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that imprisonment would be a serious injustice which overrides the need to deter such conduct by others.

11

The reiteration of the "serious injustice" standard highlights the Legislature's focus on the seriousness of child sexual exploitation-related offenses and the need to deter others from engaging in such "moral[ly] reprehensib[le] . . . behavior." See In re Cohen, 220 N.J. 7, 12 (2014) (explaining that a CSAEM-related offense "revictimizes the children involved with each viewing of the same image or video"); see also State v. Scoles, 214 N.J. 236, 255 (2013) (noting that "[p]ornography poses an even greater threat to the child victim than does sexual abuse" because the child "must go through life knowing that the recording is circulating []in . . . mass distribution" (quoting New York v. Ferber, 458 U.S. 747, 759 n.10 (1982))).

"The 'serious injustice' exception to the presumption of imprisonment applies only in 'truly extraordinary and unanticipated circumstances.'" Jabbour, 118 N.J. at 7 (quoting Roth, 95 N.J. at 358). "In certain rare instances, a trial court may find that imprisoning a person for a second-degree crime would be a 'serious injustice,' thus overcoming the presumption of imprisonment." State v. Lebra, 357 N.J. Super. 500, 508 (App. Div. 2003). However, "[t]he standard for the requisite finding of 'serious injustice' is extremely narrow." State v. Cooke, 345 N.J. Super. 480, 487 (App. Div. 2001).

To satisfy the standard, a defendant must demonstrate that his or her "character and condition" are "so idiosyncratic that incarceration . . . for the purposes of general deterrence is not warranted."  Jarbath, 114 N.J. at 398, 408-09 (finding a "psychotic" defendant with an intellectual disability who "had been severely abused in prison . . . almost daily" met the standard because she did not "comprehend that she had committed a crime" and "could not endure life in prison without unusual suffering"); State v. E.R., 273 N.J. Super. 262, 271-75 (App. Div. 1994) (noting uncontradicted prognosis of imminent death within six months due to AIDS-related disease constituted "idiosyncratic" situation).

Still, a defendant is not idiosyncratic merely because he or she finds incarceration difficult.  Indeed, "[d]efendants who commit serious crimes should expect to spend time in prison."  Jabbour, 118 N.J. at 3, 8-9 (setting aside a probationary sentence imposed on defendant's second-degree conviction for sexual assault of a four-year-old girl because defendant's emotional problems did not make him idiosyncratic so as to justify dispensing with a period of incarceration); see also State v. Johnson, 118 N.J. 10, 17-18 (1990) (noting that prisons accommodate inmates with disabilities and medical conditions).

As such,

> [i]n deciding whether the "character and condition" of
> a defendant meets the "serious injustice" standard, a

trial court should determine whether there is clear and convincing evidence that there are relevant mitigating factors present to an extraordinary degree and, if so, whether cumulatively[] they so greatly exceed any aggravating factors that imprisonment would constitute a serious injustice overriding the need for deterrence.

[Evers, 175 N.J. at 393-94 (emphasis omitted).]

"[I]t is the quality of the factor or factors and their uniqueness in the particular setting that matters." Id. at 394. The court must also consider "the gravity of the offense with respect to the peculiar facts of a case to determine how paramount deterrence will be in the [sentencing] equation." Id. at 395. Stated differently, "the judicial power to find a serious injustice and, thus, override the presumption of imprisonment 'is exercisable only in extraordinary circumstances, when "the human cost of said deterrence . . . is too great."'" Lebra, 357 N.J. Super. at 509-10 (omission in original) (quoting State v. Soricelli, 156 N.J. 525, 530 (1999), superseded on other grounds by statute, L. 1999, c. 376, § 1).

Here, although the State agreed to recommend sentencing in the third-degree range in exchange for defendant's guilty plea to a second-degree offense, the presumption of imprisonment still applied to defendant's conviction. See State v. O'Connor, 105 N.J. 399, 404-05 (1987) ("The plain language of [the statutory] provisions indicates that the applicable presumption is to be

determined not by the sentence imposed but by the offense for which a defendant is convicted."); Lebra, 357 N.J. Super. at 507 (explaining that when a defendant pleads guilty to a second-degree crime, "the presumption of imprisonment which attaches to a second-degree crime remains, even if [the] defendant has pled guilty pursuant to a plea agreement which calls for defendant to be sentenced as a third-degree offender").

Under N.J.S.A. 2C:43-2(b), except as otherwise provided, "the court may suspend the imposition of sentence on a person who has been convicted of an offense." However, "[a] court may suspend the imposition of a sentence only after first determining that a non-custodial sentence is authorized and appropriate." Rivera, 124 N.J. at 126. In order to impose a suspended sentence as occurred here, the judge was required to first analyze N.J.S.A. 2C:44-1(d) and N.J.S.A. 2C:24-4(b)(5)(b), and make specific findings to overcome the presumption of imprisonment applicable to second-degree offenses. Otherwise, "the trial court's suspension of the imposition of a sentence amounted to the unauthorized imposition of a non-custodial sentence." Rivera, 124 N.J. at 126.

Our de novo review of the sentencing transcript convinces us that the judge failed to conduct the requisite analysis to support a finding that defendant was the idiosyncratic defendant for whom imprisonment would be a serious

injustice. Indeed, the judge never even addressed the serious injustice standard and "never explained what it was about the character and condition of . . . defendant that would make his imprisonment a serious injustice." Lebra, 357 N.J. Super. at 511. Further, in reviewing the applicable aggravating and mitigating factors, the judge found that the factors were in equipoise. However, the presumption of imprisonment is not overcome because the aggravating and mitigating factors are in equipoise. Critically, the judge "never determined that the mitigating factors amounted to 'truly exceptional' circumstances or rendered defendant's character and condition 'idiosyncratic' or determined that imprisonment would result in a 'serious injustice which overrides the need to deter such conduct by others.'" Ibid. (quoting Cooke, 345 N.J. Super. at 487).

Thus, this record does not support the judge's imposition of a non-custodial sentence on a second-degree conviction. Without a detailed explanation of the statutory standard required to overcome the presumption of imprisonment, the application of the standard to the facts and circumstances at hand, and "a reasoned demonstration that this is one of those rare cases in which the otherwise paramount goals of deterrence have been overridden," ibid., the sentence violates the statute and decisional law.

Based on our conclusion, we are constrained to vacate defendant's

16

sentence and remand for resentencing. In so doing, we reject the State's invitation to exercise our original jurisdiction and sentence defendant to the agreed-upon three-year term of imprisonment. "[T]he exercise of appellate original jurisdiction over sentencing should not occur regularly or routinely; in the face of deficient sentences, a remand to the trial court for resentencing is strongly to be preferred." Jarbath, 114 N.J. at 411.

Reversed and remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1775-22